**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KACY LYNN YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-00647 |
| | § | |
| CAPITAL ONE BANK USA, N.A. and | § | With Jury Demand Endorsed |
| CAPITAL ONE, N.A., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Kacy Lynn Young ("Plaintiff"), through counsel, for her Complaint against Defendants Capital One Bank USA, N.A. and Capital One, N.A. (collectively, "Capital One" or "Defendants"), states:

### I. INTRODUCTION

1.      Defendants engaged in willful, intentional, reckless, malicious, coercive, deceptive and harassing actions against Plaintiff to further Defendants' efforts to illegally collect from Plaintiff, *in personam*, a debt included in her bankruptcy while Plaintiff was protected by the automatic stay or discharge injunction or other state and federal laws.  Defendants' actions include: 1) sending Plaintiff a regular, relentless stream of unsolicited and unwanted emails, some under the guise of Capital One's credit monitoring service called CreditWise, which Plaintiff denies being a participant, and others directly related to her discharged Capital One credit card account seeking Plaintiff to log into her credit card account or update her contact information to ensure that Capital One could send her important account information related to the discharged credit card account and authorize Defendants to send her text messages related to the discharged credit card account; 2) repeatedly accessing Plaintiff's confidential credit files, by either performing illegal

account reviews related to her discharged account or through an alleged CreditWise credit monitoring license agreement, after her bankruptcy discharge when they fully knew the debt was uncollectible and any credit pull would violate the discharge injunction and the Fair Credit Reporting Act, such actions also being an ongoing intrusion of Plaintiff's right to solitude, seclusion and private affairs; and 3) intentionally misrepresenting information or making such representations with reckless disregard for the truth of the information to the credit reporting agencies about either the status of the account or that Plaintiff had granted Capital One permission to access her credit files through CreditWise to obtain and use Plaintiff's confidential, personal information contained in her consumer report for their own purposes, including disseminating such information to their affiliates.

2.      Plaintiff, however, denies she contracted with Capital One for the CreditWise program since it was free and not offered as anything but a bonus for being a Capital One credit card holder.  She denies ever going to the CreditWise.com website and specifically enrolling in CreditWise, reading or even being asked to read the terms and conditions of CreditWise, or agreeing to participate in CreditWise.  Plaintiff never even knew a contract had been offered to her and would not have enrolled in CreditWise because she did not need or want it.  Had she known she was being offered a contract that effectively circumvented the automatic stay, discharge injunction, and the Fair Credit Reporting Act, and allowed Defendants to contact and harass her notwithstanding her bankruptcy in their attempts to collect the discharged debt, she would have soundly rejected such offer.

3.      By information and belief, Plaintiff believes Defendants intentionally provided their CreditWise program to Plaintiff in their calculated attempt to avoid the prohibitions of the discharge injunction and the Fair Credit Reporting Act and that CreditWise is an integral part of Defendants' policies, procedures, and marketing plans to profit by collecting on debts included

and discharged in bankruptcy by taking advantage of unsophisticated debtors, like Plaintiff. It is undisputable that Defendants created, own and operate the CreditWise program and used the CreditWise automated program to send Plaintiff a steady stream of emails and intentionally used CreditWise to make repeated misrepresentations to Experian and TransUnion so it could illegally obtain Plaintiff's credit reports; or if these misrepresentations were not intentional, they were certainly in reckless disregard to whether or not such representations were true. Capital One employed the common marketing strategy of assumed consent, acting as if Plaintiff wanted their CreditWise service without ever actually obtaining her enrollment or consent to its terms and conditions.

4.      Plaintiff claims Defendants violated: 1) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting intrusions on seclusion, solitude and private affairs; 3) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, "FCRA"); and 4) the discharge injunction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, and legal fees and expenses.

## II. Parties

5.      Plaintiff is a natural person residing in Collin County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

6.      Defendant Capital One Bank USA, N.A. is a national bank that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

7.      Defendant Capital One, N.A. is a national bank that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

8.      Defendants are each a "person" and "user" of consumer credit and other financial information, as the terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

9.      The debt at issue Defendants were attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2).

10.     Defendants are each a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, the "Credit Reporting Agencies" or "CRAs").

### III. JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. § 1681p.

12.     Venue is proper in this district because Defendants transact business in this district, Plaintiff filed her bankruptcy case in this district, and some of the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.    The Subject Debt Was Included in Plaintiff's Bankruptcy Case and Plaintiff Was Protected from Defendants' Collection Efforts by the Automatic Stay and Discharge Injunction.**

13.     On March 17, 2020, Plaintiff filed a Chapter 7 bankruptcy in case number 20-30896-sgj7 ("Bankruptcy Case") in the Northern District of Texas Bankruptcy Court, Dallas

Division ("Bankruptcy Court"), and listed a Capital One credit card ending in 8819 as a nonpriority unsecured claim on her bankruptcy Schedule E/F (the "Account").

14.    A true and correct copy of relevant portions of Plaintiff's Schedule E/F is attached as Exhibit "1."

15.    On March 19, 2020, the Bankruptcy Noticing Center for the Bankruptcy Court sent a true and correct copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), by electronic transmission to Capital One.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The electronic service provider did not return the 341 Notice sent to Capital One, creating a presumption it was received.

16.    On July 28, 2020, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

17.    On July 30, 2020, the Bankruptcy Noticing Center sent a true and correct copy of the Discharge Order to Capital One by electronic transmission.  This transmission constituted notice to Capital One of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

18.     A true and correct redacted copy of the Discharge Order is attached as Exhibit "2."

19.     Never during the pendency of Plaintiff's Bankruptcy Case did Capital One or any other person or entity object to or dispute the details or completeness of the Account on Schedule E/F of Plaintiff's Petition.

20.     Never did Plaintiff reaffirm the Account with any person or entity.

21.     Never did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B.     During Plaintiff's Bankruptcy Case and After the Debt Was Discharged, Defendants Made Harassing Contacts with Plaintiff as Part of Their Plan to Collect Such Debt From Her.**

22.     While Plaintiff's Bankruptcy Case was pending and after the debt had been discharged, Defendants tried to collect the Account coercing or deceiving Plaintiff into accessing the CaptalOne.com website where her credit card statements were available for her viewing and where she could make payments.  This coercion and deception took place in two forms:  (1) a relentless stream of unsolicited and unwanted emails, and (2) regular and systematic illegal access to Plaintiff's credit reports.

23.     First, Defendants, intentionally and with full knowledge that the debt to them had been included in Plaintiff's bankruptcy and later discharged, caused to be sent a relentless stream of emails urging Plaintiff to go to the CapitalOne.com website.  Some of these emails were directly from Capital One and could have no other purpose than to lure Plaintiff to their website where she would see the latest Capital One credit card statement and hopefully make a payment.  The other emails appeared to come from CreditWise by Capital One, even though Plaintiff was not a participant in CreditWise.  These emails again sought to lure Plaintiff back to the Capital One website allegedly so Capital One could help her improve her credit score.

24.     Secondly, Defendants performed illegal account reviews with Experian and intentionally accessed Plaintiff's consumer reports with TransUnion and Experian, by frequently and systematically misrepresenting to them that they either had a permissible purpose for pulling Plaintiff's consumer reports or that she was a participant in CreditWise when she was not, in reckless disregard to the truth of these representations.

25.     This relentless email campaign attempted to pressure Plaintiff into making weekly contact with Capital One by logging in to her online Account, and to update and verify her information and add text alerts so that Capital One could contact her to receive important account alerts, to give her suggestions for improving her credit score, like paying her bills on time, and to offer her new products and services from either Capital One or its affiliates.  The ultimate purpose of such engagements was to remind Plaintiff of her debt to Capital One, make her feel guilty about not paying such debt, remind her of the damage being done to her credit by filing bankruptcy and not paying Capital One, and lure her back to the Capital One website where they hoped she might make a payment.

26.     If Plaintiff did not make a payment at the Capital One website, Defendants' intention was to monitor her finances so, when the time was right, Capital One or its affiliates could offer her a new high-interest credit card or other profitable products or services.  Most of the emails contained basic disclaimers about undisclosed third-party products, services, information or recommendations which suggested Defendants were passing Plaintiff's private information to its affiliates and some even warned Plaintiff that "[b]y clicking on the links above, you may be taken to a third-party site that is not owned by Capital One."  These emails continue to the present day, almost two years after the bankruptcy was filed and the underlying debt was discharged.

27.     Defendants typically sent six different types of emails to Plaintiff:  1) requesting contact from Plaintiff related to the discharged credit card account (herein called a "Type 1

Email"), 2) enticing and encouraging Plaintiff to apply for new credit with offers of the possibility of pre-approved Capital One cards (herein called a "Type 2 Email"), 3) informing Plaintiff of changes to her Experian credit report (herein called a "Type 3 Email"), 4) notifying Plaintiff of alerts on her credit reports (herein called a "Type 4 Email"), 5) giving Plaintiff credit management tips (herein called a "Type 5 Email"), and 6) advising Plaintiff of changes to her credit score (herein called a "Type 6 Email").

**1)    Capital One Sent a Series of Email Notices Urging Plaintiff to Make Contact Notwithstanding the Automatic Stay and Discharge Injunction.**

28.    During the bankruptcy and after Plaintiff received a discharge of the Account, Capital One sent Plaintiff one or more Type 1 or Type 2 Emails requesting contact and urging Plaintiff, *inter alia*, to log into her credit card Account online, provide updated information about herself, allow Capital One to send her text messages related to the Account, to verify her mobile number so they could contact her with important account alerts, and to apply for new credit with Capital One.  With either the automatic stay or discharge injunction in effect, there was no lawful reason for Defendants to be sending these emails.  Clearly, Defendants were trying to collect the Account from Plaintiff, *in personam*.

29.    Plaintiff believes she received many Type 1 Emails during the bankruptcy while the automatic stay was in effect and after her discharge, but she did not save them and has been unable to retrieve them from her service provider at this time.  After a reasonable time for discovery, she believes these emails will be found and retrieved or produced by Defendants. Capital One sent voluminous emails, many of which Plaintiff does not have copies, but detailed information of the emails she does have are set out below.

30.    More than a year after the bankruptcy discharge, on August 10, 2021, Capital One sent Plaintiff a Type 1 Email regarding the Account stating, "Kacy, do you prefer texting?  … Stay Informed, Stay Secure  …  We noticed you're not currently set up to receive important

account alerts via text from us." "Add Text Alerts" and "Update My Account Info" buttons were included directing Plaintiff to the Capital One website. The email further advised, "With text alerts you can • Be quickly notified if we spot potential fraud • Easily reset your password… • Customize your notification settings so you only get the alerts you need the most" and that "…we'll only use your mobile number to contact you about your account and not for any marketing communications." The message concluded with: "Thanks for being a Capital One customer" and directed her to "Download the mobile app." Under the heading "Important Information from Capital One®," it instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book, that she visit www.capitalone.com/support-center/contact-us to contact them, and advised "This email … contains information directly related to your account with us…," and that "Products and services provided by Capital One Bank (USA), N.A., and Capital One, N.A." This email misrepresented that Plaintiff and Capital One still had a debtor-credit relationship and that Capital One had a right to contact Plaintiff, neither of which was true. Furthermore, it misrepresented that the Account was still open and collectible, and requested that Plaintiff sign up for text alerts regarding the discharged debt, despite the discharge being entered on July 28, 2020. Plaintiff asserts that there is simply no reason for Capital One to send these emails other than to harass Plaintiff and coerce payment of the discharged debt. The Account was discharged, closed, and the debtor-creditor relationship no longer existed.

31.    A true and correct copy of the August 10, 2021 email is attached as Exhibit "3."

32.    On September 23, 2021, Capital One sent Plaintiff a Type 2 Email stating, "Thanks for your loyalty…Please take a moment to see if you're pre-approved for a Capital One card… Because we appreciate you, here's your chance to see if you're pre-approved for a Capital One card—with no impact to your credit score… Pre-approval will help you understand if you're likely

to be approved for a card."  The email contained "See If I'm Pre-Approved" links to a Capital One website where she could enter her personal information to "..see if you're pre-approved before you apply," and directed her to "Download the Capital One mobile app."   Under the heading "Important Information from Capital One," it instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book, that she visit www.capitalone.com/support-center/contact-us to contact them, and advised "You received this email as a valued Capital One customer," and that "Products and services are offered by Capital One Bank (USA), N.A. and Capital One, N.A.  Additionally, Plaintiff was warned that "Capital One does not provide, endorse or guarantee any third-party product, service, information or recommendation listed above," and that "[t]he third-parties listed are not affiliated with Capital One and are solely responsible for their products and services;" however, it is unclear as to what third-party Defendants were referring to in the email.

33.     A true and correct copy of the September 23, 2021 email is attached as Exhibit "4."

34.     On September 28, 2021, Capital One sent Plaintiff another similar Type 1 Email seeking contact and requesting Plaintiff add text alerts.  In this email, Capital One misrepresented that there was still a debtor-credit relationship as it states that the Account still exists and requests that Plaintiff sign up for text alerts regarding the discharged debt.

35.     A true and correct copy of the second September 28, 2021 email is attached as Exhibit "5."

36.     On October 5, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

37.     A true and correct copy of the October 5, 2021 email is attached as Exhibit "6."

38.     On November 3, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

39.    A true and correct copy of the November 3, 2021 email is attached as Exhibit "7."

40.    On November 16, 2021, Capital One sent Plaintiff another similar Type 1 Email seeking contact and requesting Plaintiff add text alerts.  In this email, Capital One misrepresented that there was still a debtor-credit relationship as it states that the Account still exists and requests that Plaintiff sign up for text alerts regarding the discharged debt.

41.    A true and correct copy of the November 16, 2021 email is attached as Exhibit "8."

42.    On November 18, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

43.    A true and correct copy of the November 18, 2021 email is attached as Exhibit "9."

44.    On December 2, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

45.    A true and correct copy of the December 2, 2021 email is attached as Exhibit "10."

46.    On December 15, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

47.    A true and correct copy of the December 15, 2021 email is attached as Exhibit "11."

48.    On December 30, 2021, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

49.    A true and correct copy of the December 30, 2021 email is attached as Exhibit "12."

50.    On January 4, 2022, Capital One sent Plaintiff another similar Type 1 Email seeking contact and requesting Plaintiff add text alerts.  In this email, Capital One misrepresented that there was still a debtor-credit relationship as it states that the Account still exists and requests that Plaintiff sign up for text alerts regarding the discharged debt.

51.    A true and correct copy of the second January 4, 2022 email is attached as Exhibit "13."

52.     On January 13, 2022, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

53.     A true and correct copy of the January 13, 2022 email is attached as Exhibit "14."

54.     On January 26, 2022, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

55.     A true and correct copy of the January 26, 2022 email is attached as Exhibit "15."

56.     On February 10, 2022, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

57.     A true and correct copy of the February 10, 2022 email is attached as Exhibit "16."

58.     On February 22, 2022, Capital One sent Plaintiff another similar Type 1 Email seeking contact and requesting Plaintiff add text alerts.  In this email, Capital One misrepresented that there was still a debtor-credit relationship as it states that the Account still exists and requests that Plaintiff sign up for text alerts regarding the discharged debt.

59.     A true and correct copy of the February 22, 2022 email is attached as Exhibit "17."

60.     On February 23, 2022, Capital One sent Plaintiff another Type 2 Email with a loyalty offer to see if she was pre-approved for a Capital One credit card.

61.     A true and correct copy of the February 23, 2022 email is attached as Exhibit "18."

62.     Plaintiff is informed and believes, and upon such information and belief, that Capital One's internal policies and procedures or marketing plan dictate that emails regarding the debts included and discharged in bankruptcy be sent to debtors when certain conditions are met. Plaintiff is informed and believes, and upon such information and belief, that Defendants have set up a process to deliberately seek contact with debtors on discharged accounts to pressure them into paying the discharged debt with the pressure increasing over time.

**2)    Capital One Sent a Continuous Stream of Unsolicited Email Notices Through Its CreditWise Program.**

63.    During the bankruptcy and after the discharge, Capital One, under its CreditWise brand, sent Plaintiff a constant stream of emails alerting her to changes in her credit score and credit reports, among other things, to lure her into the Capital One CreditWise program.  However, Plaintiff did not ever go to the CreditWise.com website to sign up for CreditWise and Plaintiff never intended to enter into a CreditWise contract with Defendants or consent to Defendants pulling her credit reports post-discharge.  These emails were simply a marketing strategy to repeatedly act as if Plaintiff had enrolled in CreditWise hoping she would eventually think she had.

64.    The CreditWise emails failed to disclose that Capital One had a conflict of interest in doing credit monitoring since it was a creditor in Plaintiff's bankruptcy.  These emails are designed to and, in fact, did scare Plaintiff and make her question her decision to file bankruptcy. Most of the emails were cryptic and asked Plaintiff to check in weekly to see if there were any new changes in her credit score or to sign in soon to see the changes to her credit reports.  Such an email campaign put continuing and increasing pressure on Plaintiff to contact Capital One to see what she could do to improve her credit score.  Of course, one of the frequent recommendations from CreditWise was to "pay your bills on time."

65.    Again, Plaintiff believes she received many CreditWise emails during the bankruptcy while the automatic stay was in effect and after her discharge, but she did not save them and has been unable to retrieve them from her service provider at this time.  After a reasonable time for discovery, she believes these emails will be found and retrieved or produced by Defendants.  Capital One sent voluminous emails, many of which Plaintiff does not have copies, but detailed information of the emails she does have are set out below.

66.     More than a year after her discharge, on August 25, 2021, Capital One sent Plaintiff a Type 5 Email stating, "Time is on your side, Kacy…  Kudos!  As of your TransUnion® credit report dated August 02, 2021, you are doing a great job showing lenders how much experience you have handling credit…  Try keeping your oldest account open and in good standing by using it once a year, then making on-time payments after use.  Responsible behavior like this could help you maintain or build towards a positive credit history."  The email provided links for her to "Try the Simulator" and to "Check in with CreditWise from Capital One" if she is "[t]hinking about opening a new credit account or closing an existing one ."  Under the heading "Important Information from Capital One," the email instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book and that she visit  www.capitalone.com/support-center/contact-us  to  contact  them  and  advised,  "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion," and "Products and services are offered by Capital One Bank (USA), N.A. and Capital One, N.A., Members FDIC."

67.     A true and correct copy of the August 25, 2021 email is attached as Exhibit "19."

68.     On September 1, 2021, Capital One sent Plaintiff a similar Type 5 Email regarding management of her credit.

69.     A true and correct copy of the September 1, 2021 email is attached as Exhibit "20."

70.     On October 4, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email stating, "Hi Kacy, your score didn't change" and "Here's a quick look at your credit score activity from August 31, 2021, to September 30, 2021, that was monitored by CreditWise® from Capital One®." It further advised Plaintiff that her score had not changed and that "CreditWise monitors your … credit score and factors that can affect it—like on-time payments, available credit and new accounts," and directs her to "Sign in weekly to check your latest credit score and to get

-14-

personalized suggestions for improving your credit health." "Credit Score Change" and "See My Credit Score" links were included directing Plaintiff to the Capital One CreditWise website. Under the heading "Important Information from Capital One," the email instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book and that she visit www.capitalone.com/support-center/contact-us to contact them and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion. Alerts are based on changes to your TransUnion and Experian® credit reports and information we find on the dark web," and "Products and services are offered by Capital One Bank (USA), N.A., and Capital One, N.A., Members FDIC."

71.     A true and correct copy of the October 4, 2021 email is attached as Exhibit "21."

72.     On November 3, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising her that her credit score did not change.

73.     A true and correct copy of the November 3, 2021 email is attached as Exhibit "22."

74.     On November 4, 2021, CapitalOne CreditWise sent Plaintiff a Type 4 Email stating, "Kacy, you have new alerts on CreditWise," and requesting she "Visit the Alerts section of CreditWise® from Capital One®" to review the details. The email warns Plaintiff that "Alert types can include: changes to your credit report, changes in names and addresses that are associated with your Social Security Number (SSN), or when your SSN or email address is found on the dark web, which could also include findings of other personal information linked to your SSN or email address." The email further advised Plaintiff to "Sign in soon—staying on top of your credit can help you defend yourself against potential fraud or identity theft" and provided links for her to "Sign in to CreditWise" and "Download the CreditWise mobile app." Under the heading "Important Information from Capital One," the email instructed, to ensure delivery of further

contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "By clicking on the links above, you may be taken to a third-party site that is not owned by Capital One," and "Products and services are offered by Capital One Bank (USA), N.A., Member FDIC." Defendants often requested Plaintiff to download the CreditWise mobile app in order to trick Plaintiff into accepting the CreditWise program.

75.    A true and correct copy of the November 4, 2021 email is attached as Exhibit "23."

76.    On November 19, 2021, Capital One CreditWise also sent Plaintiff a Type 3 Email stating, "Kacy, there's been a change to your Experian credit report," Heads up:  A lender requested a copy of your credit file," and to "Visit the Alerts section of CreditWise® from Capital One®" to review the details.  The email further advises Plaintiff to "Sign in soon—staying on top of your credit can help you defend yourself against potential fraud or identity theft" and provided links for her to "Sign in to CreditWise" and "Download the CreditWise mobile app."  Under the heading "Important Information from Capital One," the email instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "By clicking on the links above, you may be taken to a third-party site that is not owned by Capital One," and "Products and services are offered by Capital One Bank (USA), N.A., Member FDIC."

77.    A true and correct copy of the November 19, 2021 email regarding Plaintiff's Experian report is attached as Exhibit "24."

78.    On December 27, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no changes in her credit score.

79.    A true and correct copy of the December 27, 2021 email is attached as Exhibit "25."

80.     On January 26, 2022, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no changes in her credit score.

81.     A true and correct copy of the January 26, 2022 email is attached as Exhibit "26."

82.     Plaintiff is informed and believes, and upon such information and belief, that Capital One's internal policies and procedures and marketing plans dictate that the CreditWise emails to debtors in bankruptcy or recently discharged be sent to encourage the debtors to enroll or stay in the CreditWise program and ratify their enrollment by responding to the emails.  Even if the debtor had never participated in CreditWise, simply by clicking on any of the numerous buttons in the emails, he or she would be considered by Capital One to have automatically enrolled in CreditWise during the bankruptcy and post-discharge.

83.     Plaintiff is informed and believes, and upon such information and belief, that Defendants have set up a process to deliberately lure debtors into the CreditWise program so Defendants can continue to have access to the debtors' credit reports to help Defendants in getting payments on the discharged debt, monitor the debtors' financial stability for future credit offers by Capital One or its affiliates, or for other purposes that financially benefit Defendants and circumvent the bankruptcy code, FCRA and other state and federal codes and statutes.

84.     Plaintiff believes that, after reasonable discovery, she can show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, under their established policies and procedures or marketing plans, to knowingly, willfully, intentionally and maliciously attempt to collect on debts included in bankruptcy or circumvent the protections provided to consumers in the FCRA.

**3)** **After the Account Had Been Discharged, Capital One Engaged in Prohibited, Harassing and Deceptive Collection Actions Against Plaintiff by Illegally Accessing Her Credit Reports.**

85.    Despite the change in the legal status of the Account upon Plaintiff's bankruptcy discharge making the debt legally uncollectible, Defendants, on at least twenty-three (23) occasions, illegally and impermissibly accessed Plaintiff's protected credit files containing her confidential, personal and financial information and obtained and used these consumer reports to further their *in personam* collection attempts against Plaintiff on the discharged debt.  After the bankruptcy discharge, Defendants performed account reviews on the discharged Account on Plaintiff's Experian credit report at least one (1) time.   Additionally, Defendants accessed Plaintiff's credit reports via the Capital One CreditWise program at least twenty-one (21) times with TransUnion and one (1) time with Experian.  Whereas the CreditWise pulls on TransUnion were disclosed on Plaintiff's credit reports, the CreditWise pulls on Experian were not disclosed, so Plaintiff believes that, after a sufficient time for discovery, she will find many more impermissible pulls of her Experian credit file.

86.    Plaintiff is informed and believes, and upon such information and belief, that Capital One knew that its only authorization to access discharged debtors' accounts ended when their accounts were closed.  Plaintiff is informed and believes, and upon such information and belief, that the CreditWise link on the CapitalOne.com website was not designed to obtain electronic signatures from customers to confirm that they had read the CreditWise terms and conditions and a subsequent electronic signature stating that they agreed to them along with any other requirements necessary to create a valid online contract.  As a result, Plaintiff asserts that Capital One was fully aware that it did not have legal authority to access Plaintiff's credit file through CreditWise.  To obtain and use Plaintiff's consumer reports, Defendants intentionally misrepresented information to Experian and TransUnion, or in reckless disregard to the truth of

the representations, that Plaintiff had either granted Capital One permission to access her credit reports or about the status of the discharged Account, representing to Experian and TransUnion that the Account was open, past due and owing by Plaintiff, and therefore, giving Defendants a legally permissible purpose to conduct account reviews and access Plaintiff's credit file and obtain her consumer reports. Defendants' purported permissible purpose, however, was false, because Plaintiff had not opened a new Capital One account, enrolled in CreditWise, or given her permission for her credit reports to be accessed by Defendants post-discharge. If Defendants allege Plaintiff gave permission through the CreditWise part of the Capital One website, Plaintiff denies entering into any such contract, or alternatively, that such contract had been expressly terminated at or near the time she filed for bankruptcy relief or is illegal or unconscionable and therefore unenforceable.

> ### (a)    Capital One Performed Illegal Account Review Inquiries with Experian on the Discharged Account.

87.    Despite the Account being discharged in Plaintiff's Bankruptcy, Capital One performed at least one (1) illegal post-discharge account review inquiry with Experian. Account reviews are done to determine whether or not a customer is in compliance with the payment terms of the account or whether the debt is collectible and are *in personam* in nature. Once the Discharge Order was entered, all account reviews should have stopped as the Account no longer existed and Plaintiff no longer had any personally liability to repay the debt.

88.    On September 16, 2021, Capital One Financial pulled Plaintiff's Experian credit report without a lawful purpose.

89.    A true and correct redacted copy of relevant portions of Plaintiff's Experian credit report generated on February 24, 2022 showing Capital One's credit pull is attached as Exhibit "27."

**(b)    Capital One, Through Its CreditWise Program, Illegally Accessed Plaintiff's TransUnion Credit Reports Without a Lawful Purpose.**

90.    Despite the Account being discharged in Plaintiff's bankruptcy, Plaintiff not being a participant in CreditWise, and without Plaintiff's consent, Capital One through its CreditWise tradename, performed at least twenty-one (21) illegal post-discharge inquires with TransUnion.

91.    On August 1, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

92.    On August 29, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

93.    On September 26, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

94.    On October 24, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

95.    On November 21, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

96.    On December 18, 2020, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

97.    On January 16, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

98.    On January 29, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

99.    On February 13, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

100.    On March 12, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

101.    On April 9, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

102.    On May 8, 2021,  Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

103.    On June 5, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

104.    On July 3, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

105.    On August 1, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

106.    On August 31, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

107.    On October 1, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

108.    On October 29, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

109.    On November 27, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

110.    On December 25, 2021, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

111.    On January 23, 2022, Defendants via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

112.    A true and correct redacted copy of relevant portions of Plaintiff's TransUnion credit report generated on February 16, 2022 showing some of Defendants' CreditWise credit pulls is attached as Exhibit "28."

**(c)    Capital One, Through Its CreditWise Program, Illegally Accessed Plaintiff's Experian Credit Report Without a Lawful Purpose.**

113.    Despite the Account being discharged in Plaintiff's bankruptcy, Plaintiff not being a participant in CreditWise, and without Plaintiff's consent, Capital One through its CreditWise tradename, performed at least one (1) illegal post-discharge inquiry with Experian.  Plaintiff believes Capital One performed many more pulls from Experian; however, Plaintiff has been unable to retrieve some of the earlier Type 3 Emails about changes to her Experian credit report and Plaintiff believes that she did not receive a corresponding Type 3 Email when no changes were found on her Experian credit reports at the time the pulls were made.  Additionally, Plaintiff believes Capital One did not disclose on her Experian report that the pulls were related to CreditWise.

114.    For example, on November 18, 2021, Defendants via CreditWise pulled Plaintiff's Experian credit report without a lawful purpose.  Defendants did not disclose that the pull that was listed under Experian was related to CreditWise.  Additionally, Plaintiff received a Type 3 Email alert the next day.  See Exhibit "24."

115.    A true and correct redacted copy of relevant portions of Plaintiff's Experian credit report generated on February 24, 2022 showing Defendants' CreditWise credit pull is attached as Exhibit "29."

**C.    Plaintiff Denies She Enrolled In a Credit Monitoring Contract With Defendants That Authorized Them to Pull Her Credit Reports Post-Discharge, But if She Did, it Was By Unilateral Mistake or, in the Alternative, Such Contract is Illegal or Unconscionable and is Void and Unenforceable.**

116.    Plaintiff not only denies she enrolled or agreed to the Terms and Conditions of CreditWise displayed on the CreditWise portion of the CapitalOne.com website, but she denies even being asked to enroll or read such terms and conditions.  The only contract there has ever been between Plaintiff and Capital One was the credit card contract (the "Credit Card Contract").

117.    At the time Defendants began sending Plaintiff CreditWise emails and CreditWise began pulling her credit reports, the CreditWise credit monitoring service was contained and administered on a website owned and operated by Capital One and did not require a contractual arrangement.  In fact, the Terms and Conditions effective at that time claimed it was giving the user a "license" to access the service.  CreditWise was set up in a *browsewrap* format, such that the consumer accessing the site was not required to agree to the terms and conditions located on the site.  For CreditWise, Capital One did not use the industry standard *clickwrap* type agreement which is designed to obtain confirmation that the customer read and agreed to the terms and conditions.  The clickwrap method attempts to create a record that the customer has agreed to the terms and conditions in order to create a legally binding online agreement, along with other required items needed to make it enforceable.  Instead, the CreditWise *browsewrap* system did not attempt to obtain any form of confirmation that Plaintiff had read and consented to the agreement.  Nor did it acquire consent and approval from Plaintiff when the CreditWise Terms and Conditions changed.  As Defendants failed to even attempt to obtain and record consent related to the CreditWise Terms and Conditions, they had no consent to give to Experian or TransUnion that Capital One has been authorized to obtain Plaintiff's credit files when the underlying debtor/creditor relationship terminated by the bankruptcy discharge.  As a result, Defendants did

not have a permissible purpose or consent to access Plaintiff's credit files under 15 U.S. Code § 1681b.

118.    In fact, Plaintiff believes, as she did, that the vast majority of debtors in similar circumstances as hers do not think a contract is being proposed or their consent is being requested for anything, but only that Capital One is sharing information with them that it had legally acquired as a creditor from the credit bureaus.  This could only happen because the debtor was not required to apply or input his or her personal profile on CreditWise as their Capital One credit card profile is used by Capital One to automatically enroll them in CreditWise.  So, Plaintiff never agreed or consented to Capital One pulling her credit reports, sending her email alerts or offering her other financial services.  Nor did Plaintiff agree or consent to a myriad of undisclosed Capital One "partners" having access to her credit reports so they could offer her their products and services without complying with the dictates of the FCRA or other relevant state and federal laws.

119.    Once Capital One charges off and closes a debtor's credit card account or when the debtor filed bankruptcy, Capital One cuts-off access to the debtor's online account.  This prevents a debtor from attempting to shut-off CreditWise.  When the debt to Capital One is discharged, Capital One no longer has the right to access the debtor's credit reports with any of the CRAs as it lacks a permissible purpose under 15 U.S. Code § 1681b.  Nor does Capital One have the right through CreditWise to pull the reports as the debtor never read or agreed to the Terms and Conditions related to CreditWise on the CapitalOne.com website.  Moreover, the CreditWise interface on the CapitalOne.com website was not designed to create a legally binding online agreement as customers were not required to review and electronically sign that they have both reviewed and agreed to the terms and conditions.  Defendants, however, continue to access the debtor's TransUnion and Experian credit reports under the guise of the alleged CreditWise license

agreement.  Moreover, the Terms and Conditions themselves fail to constitute a valid, enforceable contract.

120.    CreditWise is simply a tradename for Capital One and the credit monitoring services it allegedly provided resulted from a modification of the original Credit Card Contract, such service unilaterally offered by Capital One for Defendants' benefit rather than Plaintiff's. Capital One was already authorized to pull Plaintiff's credit report by permission when she applied for credit and then when there was a business relationship between the parties, so Plaintiff paid nothing when Capital One sent her email alerts about her credit score.  After Plaintiff filed for bankruptcy relief, Plaintiff did not understand why she kept getting such emails as she thought she was done with Capital One.  A new CreditWise contract would have required new consideration, but there was none and, more fundamentally, Plaintiff never intended to enter into a new contract and Plaintiff never asked for Defendants to monitor her credit, so there was no meeting of the minds which is absolutely necessary for a contract to be consummated.

121.    Once Capital One had closed Plaintiff's credit card account, it no longer had the right to access Plaintiff's credit reports with any of the CRAs.  Defendants, however, continued to access Plaintiff's credit reports, mostly under the guise of the illusory CreditWise license agreement or contract, but no such credit monitoring contract existed.

122.    In the alternative, and without prejudice to anything heretofore pled, if a separate "CreditWise" contract or license agreement existed, which it did not, it is void or unenforceable because of 1) illegality, 2) unilateral mistake, and/or 3) it was unconscionable.

**1)    Illegality.**

123.    A contract is illegal if the parties undertake to do an act forbidden by law in the place where the act is to occur.  When Plaintiff filed for bankruptcy relief, the automatic stay went into effect prohibiting Defendants from contacting Plaintiff to collect debt included in the

bankruptcy and the automatic stay was later replaced by the discharge injunction imposing similar restraints on Capital One, yet the alleged Capital One CreditWise contract permits, if not requires, Capital One to contact the debtor by email if her credit score changes, which it will as soon as she files bankruptcy. Thus, the alleged CreditWise contract conflicts with 11 U.S.C. §§ 362 and 524(a) of the bankruptcy code, fundamentally diminishing Plaintiff's *fresh start*, making it illegal and void. Plaintiff alleges that Defendants not only knew the contract would violate the Bankruptcy Code, but intended that result to allow it to avoid the restraints of the automatic stay and discharge injunction.

124. Should Defendants assert that a separate or new CreditWise contract exists, it would also be in conflict with the FCRA, 15 U.S.C. § 1681a(c), since Capital One is wearing two conflicting hats if there is a separate Capital One CreditWise contract, 1) as a creditor subject to the restraints of the bankruptcy automatic stay and discharge injunction, and also subject to the FCRA, but also 2) as a credit monitor providing a service to the recently discharged debtor. There is a blatant conflict of interest here because it is well-settled law that a creditor cannot obtain a credit report to aid in the collection of a discharged debt and, under the FCRA, there must be the consent of the debtor or a legitimate business purpose before credit reports can be pulled. So, there is a fatal conflict between the alleged Capital One CreditWise contract and the FCRA because how can a pre-petition consent to Capital One to pull a consumer's credit report survive filing bankruptcy? The clear answer is it cannot. If it could, then any creditor could avoid the FCRA simply by offering to share the results of their monitoring of the consumer's credit with the consumer and call it a new "credit monitoring" contract that survives bankruptcy. Of course, the creditor will deny it is trying to collect the discharged debt and is really trying to help the consumer, but that is a hollow argument.

125.    Unfortunately, this sham has become very popular as more banks, credit card issuers, and others are jumping on the bandwagon and offering all their customers credit monitoring. Again, Plaintiff alleges that Capital One intended this clever result in its alleged CreditWise contract or license agreement to allow it to continue pulling a debtor's credit reports after a bankruptcy was filed and even after the debt was discharged. Clearly, this makes the contract illegal and unenforceable once a bankruptcy is filed due to the fatal conflicts with the bankruptcy code and the FCRA.

**2)    Unilateral mistake.**

126.    A unilateral mistake is a mistaken belief held by only one party, and not shared by the other party to the contract. In other words, a unilateral mistake occurs when only one party misinterprets the subject matter or meaning of the terms in the contract agreement. Equitable relief may be granted for a unilateral mistake when the following conditions are met:

(a)    The mistake is of so great a consequence that to enforce the contract as made would be unconscionable. If a new Capital One credit monitoring contract was created, Plaintiff denies she knew anything about it. Never did she think Capital One's emails about her credit score or requests to access her Account to update her personal information, or other requests were an offer of a new contract and, if they were, which she denies, she did not intend to enter into such a contract.

(b)    The mistake relates to a material feature of the contract. Since Plaintiff did not intend to enter into a new contract with Capital One, if a new contract was created, which Plaintiff denies, it was a material and fundamental mistake as Plaintiff did not think nor did she intend to enter into a new contract.

(c)    The mistake would have been made regardless of exercising ordinary care. There was no mention or reference of a new contract in the emails sent to Plaintiff, nor did she see any indication on the Capital One website that CreditWise was a new contract that would impact her after filing bankruptcy, so no amount of care would have avoided this unilateral mistake. In fact, Plaintiff believes the emails were intentionally drafted to lure her into a new unintended contract to benefit Defendants and avoid the automatic stay, discharge injunction, and the constraints of the FCRA.

(d)    The parties can be returned to the status quo - that is, the rescission will not result in prejudice to the other party except for the loss of its bargain.

Defendants will not be harmed by the Court finding that the Capital One CreditWise contract is unenforceable as it was a free service which Defendants admit she could cancel at any time.

**3)    Unconscionability.**

127.    In the event that Defendants assert that a separate contract related to CreditWise exists, Plaintiff contends that enforcement of the Capital One CreditWise contract would be unconscionable.  A contract is unconscionable if it is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms.  The courts have defined an unconscionable contract as "one which no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other."  Proof of unconscionability begins with two broad issues: (1) how the parties arrived at the terms in controversy, and (2) whether legitimate commercial reasons justify the terms.

128.    Procedural unconscionability focuses on the parties' assent and the facts surrounding the bargaining process.  Some form of oppression and unfairness must taint the negotiation process leading to the agreement's formation.  Procedural unconscionability may be demonstrated by these factors:

(a)    Clearly, Capital One was in the driver's seat in this relationship, being a large financial institution employing many experts in marketing, legal matters, and consumer finance.  Plaintiff is an unsophisticated consumer with little knowledge of banking or the law.  The disparity could not be greater.

(b)    The presence of deception, overreaching, or other unethical business practices.  No creditor likes the fact that its debt can be extinguished when a consumer files for bankruptcy relief, so not surprisingly, Capital One would try to formulate a plan to mitigate its losses from bankruptcy.  The illusory CreditWise credit monitoring contract nullified the requirements of the FCRA to have a legal purpose before a creditor could pull a consumer's credit report.  There is no reason the CreditWise contract had to be a new contract rather than a modification of the existing contract other than so it would survive the cancellation of the Credit Card Contract when Plaintiff filed bankruptcy.  Being separate from the Credit Card Contract allowed Capital One to contact Plaintiff despite the automatic stay and discharge injunction and allowed them to monitor Plaintiff's credit to pinpoint the

appropriate time to offer her new credit without having to follow the dictates of the FCRA and only look at a consumer's credit report when it was prepared to make a firm offer of credit.

129.    The alleged CreditWise contract or license agreement, if it exists, is unconscionable and the Court should find its provisions void or unenforceable.  Defendants had no right to contact Plaintiff about credit monitoring after she filed bankruptcy since, as a creditor in her bankruptcy, they had an obvious conflict of interest and did not disclose it to Plaintiff.  Nor did they attempt to get Plaintiff to read or agree to the Terms and Conditions of such agreement, but simply presumed Plaintiff's consent and misrepresented the facts to the CRAs so they could unleash their automated email program and begin accessing Plaintiff's credit reports for their own benefit.

130.    As a result of Defendants' wrongful conduct as described herein, Plaintiff has suffered concrete injuries in fact that are likely to be redressed by a favorable judicial decision, including but not limited to violations of the TDCA, the FCRA, and discharge injunction, intrusion upon Plaintiff's right to solitude, seclusion and private affairs, and the disclosure to Defendants of her private information.  Additionally, Defendants' emails to Plaintiff contain disclosures indicating that her credit file has been shared with third parties and that Plaintiff may have to go to a third-party website to access the credit reports that Defendants obtained without a permissible purpose.  Specifically, Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25 and 26 state:  "Capital One does not provide, endorse or guarantee any third-party product, service, information or recommendation listed above.  The third-parties listed are not affiliated with Capital One and are solely responsible for their products and services.  All trademarks are the property of their respective owners."  Also, Exhibits 23 and 24 warn Plaintiff that:  "By clicking on the links above, you may be taken to a third-party site that is not owned by Capital One," in addition to stating: "Capital One does not provide, endorse or guarantee any third-party product, service, information or recommendation listed above.  The third-parties listed are not affiliated

with Capital One and are solely responsible for their products and services. All trademarks are the property of their respective owners."

131.    The purpose of Plaintiff filing bankruptcy was to get relief from the stress and anxiety caused by the dire financial straits in which she found herself. Because Defendants did not respect the discharge injunction, as well other state and federal laws as more particularly set forth below, Plaintiff has understandably and plausibly suffered, and continues to suffer, severe and extreme emotional distress causing her to experience physical symptoms of stress, anxiety, worry, fear, headaches, fatigue, distraction and made her pre-existing insomnia worse, which increased, and will continue to increase, with each contact from Defendants and each illegal access to her credit reports as more particularly set forth in the following sections, including section X – Damages.

## V.  GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

132.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

133.    Defendants have violated the Texas Finance Code in numerous ways, including, but not limited to:

  a)    Tex. Fin. Code § 392.301(a)(8). "THREATS OR COERCION. (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: ... (8) threatening to take an action prohibited by law."

Because 1) the bankruptcy automatic stay and discharge injunction have force of law and prohibit creditors from attempting to collect debts included or discharged in bankruptcy, *in personam*; and 2) the common law protects Plaintiff from intrusions to her solitude, seclusion, and private affairs, Defendants' actions at issue of a) relentlessly sending automated emails urging Plaintiff to go to her

online Account on the Capital One website when the only purpose of such a visit would be to make a payment to Capital One and to verify her information and add text alerts so Capital One could send important account alerts (which are automatic stay and discharge injunction violations) and b) pulling her credit reports without a permissible purpose or without her consent under the guise of credit monitoring, conducting account reviews on an account that was discharged and no longer existed, and intentionally or recklessly misrepresenting to Experian that the discharged Account was still open in violation of the discharge injunction, also violated the TDCA.

      b)    Tex. Fin. Code § 392.304(a)(8). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS. (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

Defendants misrepresented information to Plaintiff and Experian about the Account to allow Defendants to perform post-discharge account review inquiries on Plaintiff's credit reports and to Experian and TransUnion to allow them to conduct pulls, through CreditWise, of Plaintiff's credit reports. These representations were intentional or reckless and calculated to make it appear that Plaintiff's Account was open, due and collectible and therefore Defendants had a right or Plaintiff's permission, through CreditWise, to conduct pulls of Plaintiff's credit reports to get information to aid in their efforts to collect the discharged Account or disseminate information about Plaintiff's finances to Capital One's affiliates. Additionally, Defendants misrepresented to Plaintiff through the emails sent to Plaintiff that the Account, which had been discharged, was open, due and

owing; and these were also misrepresentations of the character, extent or amount

of the debt in violation of the TDCA.

        c)      Tex. Fin. Code § 392.304(a)(19). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS. (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

For the reasons stated in the preceding paragraphs (a - b), Defendants

intentionally and willfully, not only threatened, but actually tried to coerce or

deceive Plaintiff into paying the debt, while Defendants knew the Account was part

of Plaintiff's bankruptcy or later discharged in Plaintiff's bankruptcy, rendering the

debt legally uncollectible from Plaintiff in personam. Secondly, Defendants

continued to conduct account reviews on her credit reports with Experian despite

the fact that the Account no longer existed and the debt was no longer collectible.

Finally, the entire CreditWise credit monitoring program was an intentional,

calculated attempt to obtain personal financial information about Plaintiff without

her knowledge or consent in an attempt to collect the discharged debt and for other

purposes that benefited Defendants.

134.   Regarding Plaintiff's claim against Defendants under Tex. Fin. Code §

392.304(a)(8), all of Defendants' misrepresentations made to Plaintiff about the character, extent,

amount or status of the subject discharged debt were done intentionally or in reckless disregard to

the truth and made to deceive Plaintiff into believing she was still personally liable for the

discharged debt, and did cause Plaintiff to have such belief. Defendants' misrepresentations made

to Plaintiff caused and resulted in her thinking differently about the character, extent, amount or

status of the subject discharged debt. After she received her bankruptcy discharge, Plaintiff

believed she was no longer personally liable for the debt on the Account; however, Defendants' misrepresentations made her think perhaps her bankruptcy attorney made an error or there was some issue about which she was unaware that caused the debt to not be discharged in her Bankruptcy Case and that she had to pay it. Defendants' actions in relentlessly sending Plaintiff automated emails about the discharged Account and stalking her through her credit reports caused and exacerbated her already extreme mental anguish and emotional distress.

135.    Under Tex. Fin. Code Ann. § 392.403, Defendants' actions make them liable for Plaintiff's actual damages, statutory damages, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendants' malice, actual fraud and/or willful, reckless and intentional misconduct, entitling Plaintiff to recover punitive damages.

136.    Because of Defendants' conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY – INTRUSION ON SECLUSION

137.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if rewritten here.

138.    Defendants intentionally and maliciously intruded on Plaintiff's *solitude, seclusion and private affairs* when Defendants, during the bankruptcy and after the debt had been discharged, repeatedly sent automated emails to Plaintiff requesting she contact Capital One and to review information it impermissibly obtained (post-discharge) from Plaintiff's credit files with Experian and TransUnion. Additionally, with regard to the discharged Account and through the Capital One CreditWise program, Defendants repeatedly sought contact with Plaintiff via emails and text so that Capital One could send her alerts related to the discharged Account when they

knew such contact was prohibited by the bankruptcy automatic stay and later the discharge injunction. Such emails even suggested Capital One was sharing Plaintiff's confidential personal and financial information with third parties. Then, after the debt had been discharged, Defendants intentionally or with reckless disregard for the truth made false representations to Experian that the Account was open, due and owing and to TransUnion and Experian that they had Plaintiff's permission in order to get access to Plaintiff's private personal and financial information contained in her credit reports. Such actions were intrusions on Plaintiff's solitude, seclusion and private affairs.

139.    These intrusions were of a kind that would be highly offensive to a reasonable person because each involved the intentional or reckless misrepresentation of facts in violation of federal or state law(s) and were designed to injure Plaintiff both physically and financially. Plaintiff believes that, after time for reasonable discovery, she will be able to show that this information was sought to aid Defendants in their continuing attempts to collect the discharged debt or to circumvent the requirements of the FCRA that require consent or a lawful purpose for accessing a person's credit reports. Also, Plaintiff believes Defendants sought to surreptitiously monitor Plaintiff's finances with the hope that, when the time was right, they could lure her into applying for another lucrative credit card contract to recoup their losses from Plaintiff's bankruptcy. Defendants did in fact send Plaintiff at least eleven emails trying to entice her to see if she was pre-approved for new Capital One credit cards.

140.    These intrusions were also of a kind highly offensive to a reasonable person since the mere receipt of each of the many emails, whether fully read or not, was a harsh reminder of Plaintiff's bankruptcy and rekindled all the negative emotions associated with her financial troubles and having to file bankruptcy which she was trying to forget; and these illegal intrusions into her private financial information contained in her credit report were unsettling as Plaintiff had

no idea who at Capital One or its affiliates were looking at such information and for what purpose other than to harm her.

141.   At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendants during the pendency of her bankruptcy and after the debt was discharged.  Plaintiff was entitled to a "fresh start" after going through the bankruptcy process and this was frustrated by Defendants' outrageous disregard for federal and state law(s).  Plaintiff was injured each and every time she saw an email in her inbox, whether she read the entire email or not, as each was an emotional stab which caused her fear, worry, shock and physical pain.  These emails from Defendants and their illegal access to Plaintiff's credit reports were intrusions on Plaintiff's solitude, seclusion and private affairs.

142.   Defendants' intentional or reckless acts injured Plaintiff, which resulted in extreme emotional anguish, causing  the physical harm of stress, anxiety, headaches, distraction, exacerbated her pre-existing insomnia, loss of time and inconvenience and a fear that she has lost control of her credit files and what impact that would have on her future.

143.   Plaintiff's injuries resulted from Defendants' malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a).

### VII.  GROUNDS FOR RELIEF - COUNT III

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et seq.*)

144.   Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

145.   Plaintiff brings claims against Defendants under the FCRA under 15 U.S.C. §§ 1681n and o, entitling Plaintiff to relief against Defendants for damages and attorney's fees for intentionally, knowingly or recklessly obtaining and using Plaintiff's consumer reports post-

discharge under false pretenses and without a permissible purpose in violation of the requirements imposed by the FCRA, respectively.

146.    Post-discharge, Defendants intentionally accessed Plaintiff's credit files with the Experian and TransUnion and intentionally, or with reckless disregard for the truth, made misrepresentations to the Experian and TransUnion in order to gain access to Plaintiff's credit files with Experian and TransUnion and obtained, used and disseminated to Capital One's affiliate partners and other third parties her consumer reports containing her confidential, personal and financial information without her consent and with no permissible purpose.

147.    The FCRA establishes very specific limits as to when and why an entity can obtain a consumer report:

> (f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –
>
> > (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> >
> > (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

148.    Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer report can be obtained; it states, in relevant part:

> (a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> > ***
> >
> > (3) To a person which it has reason to believe –
> >
> > > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;
> > >
> > > ***
> > >
> > > (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

* * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

149.    Section 1681a(d)(1) defines a "consumer report" as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or
(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

150.    After the discharge, Defendants intentionally, or with reckless disregard for the truth, furnished false information to Experian and TransUnion, misrepresenting that they had permission or another legally permissible purpose to conduct an inquiry and review of the Account, so they could gain access to Plaintiff's protected credit files with Experian and TransUnion and impermissibly obtain and use her confidential, personal and financial information in her consumer report(s).

151.    Defendants represented to Experian and TransUnion that their alleged permissible purpose for conducting post-discharge reviews of the Account was because the Account was open, due, owing and collectible from Plaintiff or that Plaintiff had given Capital One permission, through its CreditWise program to access her reports, both of which were false.  There was no

permissible purpose for Defendants to obtain and use Plaintiff's consumer reports nor did they have her consent to do so.

152.    Plaintiff is informed and believes, and upon such information and belief, that the CreditWise link on the CapitalOne.com website was not designed to obtain electronic signatures from customers to confirm that they had read the CreditWise terms and conditions and a subsequent electronic signature stating that they agreed to them along with any other requirements necessary to create a valid online contract.  As a result, Plaintiff asserts that Capital One was fully aware that it did not have legal authority to access Plaintiff's credit file through CreditWise.

153.    At all relevant times, Defendants had actual knowledge that, after the discharge being granted, the discharge injunction was in effect and legally prohibited Defendants from pursuing any collection against Plaintiff on the Account.

154.    Defendants' impermissible obtaining or using of Plaintiff's private personal and financial information held in her consumer reports from Experian and TransUnion, when Defendants had actual knowledge they had no legally permissible purpose to do so, constitutes Defendants' knowing and willful violations of the FCRA under 15 U.S.C. § 1681n reckless, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

155.    Plaintiff believes that, after reasonable discovery, she can prove Defendants obtained, used and shared with one or more of Capital One's affiliated partners Plaintiff's consumer report(s), and private, personal and financial information therefrom, illegally to attempt to collect on the discharged Account from Plaintiff personally or used such information to benefit Defendants.

156.    Plaintiff believes that, after reasonable discovery, she can prove Defendants obtained and used Plaintiff's consumer report(s), and private, personal and financial information therefrom, for the illegal purpose of attempting to collect on the discharged Account from Plaintiff

personally or to evaluate Plaintiff's current financial situation for potential offers of new credit from Capital One or its affiliates without having to formally offer such new credit.

157.    Plaintiff believes that, after reasonable discovery, she can prove Defendants are unwilling or unable to prevent their system(s) or agents, from requesting and obtaining Plaintiff's consumer report(s) without a permissible purpose to do so, subjecting Plaintiff to having her private, personal and financial information disclosed to Defendants and Capital One's affiliates without her consent, authorization or other legal justification.

158.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, extreme mental anguish and emotional distress caused by each email received, whether she opened it or not or whether or not she clicked any link, as just seeing the emails and their content from Capital One caused her pain, resulting in physical harm, as more particularly set forth in section X – Damages and incorporated herein by reference, entitling Plaintiff to an award of actual and statutory damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, under 15 U.S.C. §§ 1681n or o.

159.    The injuries suffered by Plaintiff because of Defendants' impermissibly obtaining and using Plaintiff's consumer report(s) post-discharge were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages under 15 U.S.C. § 1681n(a)(2).  Because Defendants' impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, and because the violations may be ongoing, Defendants are liable for any future harm suffered by Plaintiff because of Defendants' actionable conduct.

160.    After being afforded a reasonable time to conduct discovery, Plaintiff believes she can show that, at all relevant times, Defendants knew, and continue to know, that a discharge order

granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but Defendants have made a corporate decision to intentionally, willfully or recklessly and maliciously act contrary to this knowledge in their calculated decision to violate their duty and requirement to furnish accurate information to the CRAs, by furnishing to the CRAs false information of a purported permissible purpose to access the credit files of and obtain confidential personal and credit information and consumer reports for discharged consumers, alleging accounts with discharged debt are open and collectible or that consumers with discharged debt Capital One is servicing have applied for new credit, all to further Defendants' illegal *in personam* collection attempts on discharged debt.

## VIII.  GROUNDS FOR RELIEF – COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

161.    Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

162.    At all material times, Defendants had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

163.    Defendants attempted to collect from Plaintiff personally on the discharged debt or coerce Plaintiff into actions benefiting Defendants, as evidenced by Defendants' unwanted credit monitoring, illegal access of Plaintiff's credit reports with TransUnion and Experian, illegal account reviews with Experian, and a relentless automated email campaign related to the discharged Account and through their CreditWise credit monitoring service which Plaintiff did not want and did not enroll.  The emails all requested Plaintiff follow links back to the Capital One website where Plaintiff could find her latest statement, make payment on the discharged Account or find out the status of her credit, all when she was protected by the discharge injunction.  The information Defendants fraudulently obtained from Plaintiff's credit reports provided valuable

information to Defendants to aid them in collecting the discharged debt or evaluating Plaintiff's current financial situation for future offers of credit without having to comply with provisions of the FCRA designed to protect consumers from illegal access to their credit reports.

164.   Defendants' actions were willful acts to further their efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Defendants attempted through their relentless emails and post-discharge credit pulls to coerce and deceive Plaintiff, through fear, intimidation and deception, directly and through Capital One's CreditWise program, to pay the discharged debt.  Defendants' failure to comply with the aforesaid laws, despite Defendants' being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendants' utter contempt for federal law and the discharge injunction.

165.   The actions of Defendants constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

166.   Defendants knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this prima facie showing by Plaintiff, the duty falls on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendants of their present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendants must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants.  Any allegation of a good faith exception should not be allowed.

167.    Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order issued under 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived ..."

168.    There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendants' conduct, which was in blatant disregard of the discharge injunction.

169.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

170.    Also, no requirement of mitigation on the part of Plaintiff is relevant to Defendants' violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendants would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court ensures its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendants to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants.  No defense of failure to mitigate should be allowed.

171.    Plaintiff has been injured and damaged by Defendants' actions, and Plaintiff may recover judgment against Defendants for actual damages and punitive damages, plus an award of

costs and reasonable attorney's fees, for Defendants' violations of violations of the discharge injunction of 11 U.S.C. § 524 and under the Court's powers under 11 U.S.C. § 105.

## IX. *Respondeat Superior* and Vicarious Liability

172.    After a reasonable time to conduct discovery, Plaintiff believes she can show that all actions alleged herein were taken by employees, agents, servants, or representatives of Defendants and were done in the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all actions under a theory of *respondeat superior* and/or vicarious liability.

## X. Damages

173.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

174.    Besides any damages stated hereinabove, the conduct of Defendants has caused and will cause Plaintiff past and future severe mental distress and emotional anguish, which caused Plaintiff fear, worry, anxiety and other discernable injuries to Plaintiff's emotional state, producing symptoms of stress, anxiety, headaches, exacerbated her pre-existing insomnia, and other damages, evidence for all of which will be presented to the jury.  Dealing with the consequences of Defendants' actions has cost Plaintiff time and mental energy, which are precious to her. Because Defendants' harassment was continuous during her bankruptcy and after she received a discharge, Plaintiff was concerned that something had gone wrong with the bankruptcy and was concerned that the debt was somehow not discharged.

175.    Specifically, the actions of Defendants, in particular, this sending of a relentless stream of emails, whether read in their entirety or not, brought back the negative emotions and anguish of having to file and go through bankruptcy and caused Plaintiff new fears, headaches, anxiety, stress, extreme mental anguish, and has exacerbated her pre-existing insomnia problems.

Feelings of extreme worry, fear and anxiety overtook Plaintiff and increased with each email contact from Defendants. Even without clicking any links, just reading the emails from Capital One and seeing the visible content was an emotional stab that made Plaintiff feel that she was being harassed. Plaintiff feels as though she has lost control of who has access to her credit files and privacy because Defendants keep accessing her credit files whenever they choose without her permission or consent. As a result of this, Plaintiff has lost sleep worrying about what Defendants are doing with the data they collected, how it will impact her future finances and credit, and why Capital One is sending emails about the discharged Account itself. Additionally, Plaintiff believes Defendants are illegally sharing that information with third parties without her permission based on the language in some of the emails described above. Because Defendants' harassment was continuous and they were sending emails about the discharged Account, sending continuous emails about her credit reports, performing account reviews related to the discharged Account, and illegally accessing her credit reports under the guise of credit monitoring that should have stopped when the bankruptcy was filed, Plaintiff was concerned that something had gone wrong with the bankruptcy and that the Capital One debt was somehow not discharged.

176.    Plaintiff believes that, after reasonable discovery, she can show that all actions taken by or on behalf of Defendants were done willfully, knowingly, intentionally, and/or recklessly, and therefore maliciously with the desire to harm Plaintiff by inducing her to pay the discharged debt even though they were aware such acts violated the law.

177.    Plaintiff believes that, after reasonable discovery, she can show that Defendants' actions are an integral part of Defendants' illegal design, implemented in their policies and procedures, to profit by harassing unsophisticated debtors and collecting debts included in the debtors' bankruptcy case.

178.     Plaintiff believes that, after reasonable discovery, she can show that Defendants have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendants, intentionally and knowingly or recklessly, has refused to correct their policies and comply with applicable laws, of which laws Defendants are well aware.

179.     Plaintiff believes that, after reasonable discovery, she can show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, under their established policies and procedures, regarding knowingly, willfully, intentionally, recklessly and maliciously attempting to collect on debts in bankruptcy.  Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendants.  Moreover, Plaintiff's injuries resulted from Defendants' malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

180.     Due to Defendants' conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kacy Lynn Young prays the Court:

A.     Enter judgment for Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendants' violations of the TDCA, intrusion to seclusion, solitude and private affairs, the FCRA and violations of the discharge injunction,

B.     Find that circumstances exist for an award of punitive damages to Plaintiff,

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law, and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

March 21, 2022                    */s/ James J. Manchee*
Date                              James J. Manchee