**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KACY LYNN YOUNG, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:22-cv-00647-M |
| CAPITAL ONE BANK USA NA, et al., | § § § | |
| Defendants. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Transfer (ECF No. 13), filed by Defendants Capital One Bank USA, N.A. and Capital One, N.A. (collectively, "Capital One"). For the reasons stated below, the Motion is **GRANTED.**

### I. BACKGROUND

This case arises out of Plaintiff Kacy Lynn Young's ("Plaintiff") bankruptcy petition filed on March 17, 2020, which listed a Capital One credit card as a nonpriority unsecured claim. The Bankruptcy Court subsequently discharged Plaintiff from any liability for the debt created by her Capital One account. Am. Compl. (ECF No. 16) ¶ 17–18. On July 30, 2020, the Bankruptcy Court notified Capital One of the discharge, and informed Capital One that it was prohibited from collecting the discharged debt or contacting Plaintiff in any attempt to collect the discharged debt. *Id.* ¶ 17.

On March 21, 2022, Plaintiff Kacy Lynn Young sued Capital One for alleged violations of (1) the Texas Debt Collection Act, (2) common law prohibitions on intrusions on seclusion, solitude, and private affairs, and (3) the Fair Credit Reporting Act. *Id.* ¶ 5. Plaintiff alleges that

1

Capital One has attempted to collect the discharged debt through "coercion and deception" in the form of "regular and systematic illegal access to Plaintiff's credit reports" and "a relentless stream of unsolicited and unwanted emails," including emails from Capital One's credit monitoring system, called CreditWise. *Id.* ¶¶ 2, 25. Plaintiff denies intentionally enrolling in the CreditWise program, and alleges that she "never intended to enter into a CreditWise contract with Defendants or consent to Defendants pulling her credit reports post-discharge." *Id.* ¶ 63; *see also id.* ¶ 2 ("Plaintiff . . . denies she contracted with Capital One for the CreditWise program since it was free and not offered as anything but a bonus for being a Capital One credit card holder.").

On April 19, 2022, Capital One moved to transfer the case to the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1404(a), arguing that Plaintiff signed up for CreditWise, and in doing so, she agreed to terms and conditions containing a mandatory forum selection clause. ECF No. 13. For support, Capital One provided the declaration of Amshuman Ramachandran, a Capital One Senior Business Manager, which states that Plaintiff enrolled in CreditWise on September 6, 2018, prior to filing for bankruptcy, and in doing so, accepted the CreditWise terms and conditions, which contained the following:

> You irrevocably and unconditionally submit to the jurisdiction and venue of the United States District Courts for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction, to the courts of the Commonwealth of Virginia located in Henrico County.

ECF No. 14 at 1–5, 8–9.

Mr. Ramachandran's declaration explains that the records associated with Plaintiff's CreditWise account indicate that she accessed CreditWise fifteen times between September 6, 2018, and August 1, 2020. *Id.* at 3. Plaintiff objected to Mr. Ramachandran's declaration, and provided her own declaration, which states "I was never asked if I wanted to enroll in

2

CreditWise nor has anyone from Capital One or CreditWise ever asked me to read the CreditWise Terms and Conditions." ECF No. 22 at 2. Both Mr. Ramachandran and Plaintiff each submitted supplemental declarations. ECF Nos. 39, 46.

On July 5, 2022, the Court heard argument on the Motion to Transfer. On July 18, 2022, the Court entered an order allowing limited discovery related to Plaintiff's creation of a CreditWise account, namely, whether Plaintiff agreed to the CreditWise terms and conditions, including the mandatory forum selection clause. ECF No. 47. The Court also granted Capital One's motion to stay the case pending resolution of the motion to transfer. ECF Nos. 15, 42. After conducting limited discovery, each side submitted supplemental briefing, including deposition testimony of Plaintiff and Mr. Ramachandran. ECF Nos. 52–57.

## II.     Legal Standard

The Supreme Court has instructed that the appropriate mechanism to enforce a contractual forum selection clause is to seek transfer under 28 U.S.C. § 1404(a). *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the Western Dist. of Tex.*, 571 U.S. 49, 59 (2013) ("Section 1404(a) . . . provides a mechanism for enforcement of forum [] selection clauses that point to a particular federal district."). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Under the traditional § 1404(a) analysis, the Court must "evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. However, this analysis changes when the parties agree to a mandatory forum selection clause. *Id.* at 63; *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) (a forum selection

3

clause is mandatory "only if it contains clear language specifying that litigation *must* occur in the specified forum"). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum [] selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. Second, the Court should disregard arguments about the parties' private interests. *Id.* at 64. "When parties agree to a forum [] selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Accordingly, forum selection clauses should be "given controlling weight in all but the most exceptional cases." *Id.* at 63. Put differently, a contractual forum selection clause requires transfer, unless "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor" enforcement of the contractual choice of forum. *Id.* at 52.

### III.     Analysis

Defendants assert Plaintiff agreed to the forum selection clause contained in the CreditWise terms and conditions when she enrolled in CreditWise. ECF No. 54 at 2. Plaintiff disputes that she agreed to any forum selection clause. Accordingly, a threshold issue in resolving the Motion to Transfer is to determine whether Plaintiff agreed to the forum selection clause.

Defendants point to the declarations and deposition testimony of Mr. Ramachandran as evidence that Plaintiff enrolled in CreditWise and agreed to its terms and conditions, including the forum selection clause. Mr. Ramachandran testified that as chief of staff for CreditWise, he has purview over all processes in CreditWise that include enrollment, unenrollment, accepting offers, using the app, and receiving emails, and is notified of all changes to this process. ECF No. 54-1 at 15–16. In his supplemental declaration, Mr. Ramachandran describes the regular

4

practice of Capital One to make and store business records, and provides a copy of Plaintiff's CreditWise enrollment record. ECF No. 37-1 at 6; ECF No. 39-2 at 2. The enrollment record lists certain information relating to Plaintiff—such as her name, birthdate, address, email address, and social security number—and states that the "CreditWise profile open date" is "09/06/2018." ECF No. 39-2 at 2. In addition, the enrollment record states "Accepted Terms and Conditions? Y." *Id.* Mr. Ramachandran further attaches a copy of the CreditWise terms and conditions that were in effect on September 6, 2018, which contain the forum selection clause, quoted previously, that indicates the user's agreement to "irrevocably and unconditionally submit" to venue in the Eastern District of Virginia. ECF No. 37-5 at 4.

In both his supplemental declaration and during his deposition, Mr. Ramachandran described the CreditWise enrollment process, and explained that when a user enrolls in CreditWise via a web browser or the Capital One application—either after the user signs into his or her Capital One account or creates a Capital One log-in profile, if the user does not have a preexisting Capital One account—the user is directed to an enrollment page and asked to accept the terms and conditions by pressing the "Accept" button. ECF No. 37-1 at 2; ECF No. 54-1 at 44–47. Mr. Ramachandran attached to his declaration screenshots of the CreditWise enrollment websites as they existed on September 5, 2018, which show the enrollment page, complete with a link to the CreditWise terms and conditions, two buttons saying "Decline" and "Accept," and text stating, in part, "By selecting Accept, I'm okay with the CreditWise terms." ECF No. 37-3 at 2. He also provided screenshots of computer code used by Capital One, which he contends required Capital One's systems to determine if a user had enrolled in CreditWise prior to allowing the user to access the user's CreditWise account, and if not, directed the user to the enrollment page. ECF No. 37-1 at 3 ("At no time did the coding logic allow an existing Capital

One account holder to subscribe to (enroll in) CreditWise unless and until that account holder accepted the CreditWise Terms and Conditions."); ECF No. 39-1 at 2–3.

In response, Plaintiff does not expressly deny that she accessed or enrolled in CreditWise, opened a CreditWise account, or accepted the CreditWise terms and conditions.  Nor does she contend that she somehow accessed CreditWise without agreeing to the terms and conditions.  Instead, Plaintiff states in her supplemental declaration "I never *intended* to enroll in CreditWise," and that, "*[t]o my knowledge*, I did not see, read, or agree to any Terms and Conditions for CreditWise."  ECF No. 46 at 2 (emphasis added).  Plaintiff couches other statements in her declaration with similar qualifying language; she states that if her Capital One account invited her to see her credit score, she "may have clicked to look at it, but . . . would not have signed up for an ongoing service with CreditWise unless it was simply not clear what I was clicking on or agreeing to."  *Id.* at 3.  In her deposition, Plaintiff stated she did not recall agreeing to any terms and conditions or enrolling in CreditWise, but also described her "confusion surrounding the CreditWise issue" and acknowledged that she could not remember "that far back" as to whether she received CreditWise advertising in 2017 and 2018, and that there was a possibility that she had "unintentionally enrolled."  ECF No. 53-5 at 15, 29, 42, 52.  Plaintiff further objects to Mr. Ramachandran's declarations and deposition testimony, contending that he lacks credibility, lacks personal and relevant knowledge and expertise, and relies upon conclusory facts and allegations.  ECF No. 55 at 2.  Those objections are overruled.

In sum, the evidence indicates that Plaintiff's CreditWise account was created on September 6, 2018, and that there was no means of enrolling in CreditWise without agreeing to the CreditWise terms and conditions, which included the forum selection clause.  Plaintiff does not contend that she did not enroll in CreditWise or that she somehow enrolled in CreditWise

6

without accepting the terms and conditions. Instead, Plaintiff appears to simply not remember whether she enrolled in CreditWise, and asks the Court to credit her retrospective, post-hoc belief that she would not have agreed to any terms and conditions. However, in the absence of any actual factual dispute as to whether Plaintiff enrolled in CreditWise, the Court finds that, for the limited purposes of resolving the Motion to Transfer, the weight of the evidence indicates that when Plaintiff accessed CreditWise, she necessarily agreed to the CreditWise terms and conditions, including the forum selection clause.

Plaintiff does not dispute that the forum selection clause—which states that the parties "irrevocably and unconditionally submit to the jurisdiction and venue of the United States District Courts for the Eastern District of Virginia"—is mandatory. *See* ECF No. 13 at 2; *see, e.g.*, *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, 2010 WL 445927, at *1 n.1 (N.D. Tex. Feb. 9, 2010) (a clause in which the parties "irrevocably consent" to a particular venue is "mandatory and exclusive"). Accordingly, as the party defying application of the mandatory, agreed-to forum selection clause, Plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Atl. Marine*, 571 U.S. at 63.

The Court concludes that the forum selection clause requires transfer, because Plaintiff has not shown that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor" enforcement of the contractual choice of forum. *See id.* at 52; *id.* at 62 n.6 (public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law"). Plaintiff primarily argues that transfer is inappropriate because Plaintiff resides in Texas, and it would be inconvenient for her to prosecute her case in Virginia. However, such inconvenience would exist in any litigation

taking place outside one's home forum, and accordingly does not constitute "extraordinary" circumstances that would justify disregarding the forum selection clause. In addition, Plaintiff does not meaningfully rebut Capital One's evidence that the first and third public interest factors—administrative difficulties and whether the forum is "at home" with the law—favor transfer, in light of the fewer cases pending and shorter time to disposition in the Eastern District of Virginia, in comparison to the Northern District of Texas, and the Supreme Court's recognition that federal judges routinely apply the law of different jurisdictions. *See Atl. Marine,* 571 U.S. at 67–68 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."); *see also* ECF No. 13 at 9; ECF No. 20 at 14.

### IV.   CONCLUSION

For the foregoing reasons, because the parties agreed to litigate disputes in the Eastern District of Virginia and Plaintiff has not shown the existence of any extraordinary circumstances that could justify not enforcing the forum selection clause, this case should be transferred under 28 U.S.C. § 1404(a). Accordingly, the Court **GRANTS** the Motion to Transfer, and **TRANSFERS** this action to the Eastern District of Virginia, Alexandria Division.

**SO ORDERED**.

November 18, 2022.

*/s/ Barbara M. G. Lynn*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE

8