UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KACY LYNN YOUNG, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:22cv1326 (PTG/WEF) |
| § | |
| CAPITAL ONE BANK USA, N.A, and § | |
| CAPITAL ONE, N.A., § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Kacy Lynn Young ("Plaintiff") submits this supplemental memorandum pursuant to this Court's Order of August 24, 2023 (ECF 101) to address: 1) whether there is a valid, enforceable contract between the parties; 2) if there is a contract, whether the forum-selection clause is mandatory; and 3) what substantive law governs the resolution of the foregoing issues, as well as subsequent issues, given that this Court is the transferee forum for a case transferred under 28 U.S.C. § 1404(a) and, in support thereof, respectfully shows the following:

**I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

On May 4, 2022, Plaintiff filed and served Defendants with her First Amended Complaint ("FAC"), asserting three (3) causes of action against Defendants for violations of: 1) the Fair Credit Reporting Act ("FCRA"); 2) the common law tort of invasion of privacy; and 3) the Texas Debt Collection Act ("TDCA"), more specifically Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(8) and 392.304(a)(19). (ECF 16 at pp. 1-3, ¶¶ 1-5).

On November 18, 2022, the Court in the Northern District of Texas, granted Defendants' Motion to Transfer holding that "for the limited purposes of resolving the Motion to Transfer, the

1

weight of the evidence indicates that when Plaintiff accessed CreditWise, she necessarily agreed to the CreditWise terms and conditions, including the forum selection clause." (ECF 58 at p. 7). In her FAC, Plaintiff denied she enrolled in CreditWise or authorized Defendants to pull her credit reports and pled that, if the Court found Plaintiff had agreed to the CreditWise terms and conditions, that it was by unilateral mistake or, in the alternative, requested the Court find that such contract is illegal or unconscionable and is void and unenforceable. (ECF 16 at pp 24-32, ¶¶ 127-146). In its Memorandum Opinion and Order on November 18, 2022 (ECF 58) ("Opinion"), the transferring court did not address Plaintiff's defenses to the alleged contract and specifically stated that its ruling was for the limited purposes of resolving the Motion to Transfer.

## II. ARGUMENT

**A.      There is No Valid, Enforceable Contract Between the Parties.**

Defendants have alleged that Plaintiff entered into a separate and distinct contract or license with Capital One for its credit monitoring "service" or "tool," and therefore the forum-selection clause in the CreditWise terms and conditions should be enforced. As an affirmative defense, Defendants bear the burden of proof that such a contract was created and existed and that it was not part of the GM/Capital One credit card contract that was discharged in Plaintiff's bankruptcy. But a court will enforce a forum-selection clause only if there is a valid contract between the parties at the outset. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 187 n.2 (5th Cir. 2018).

On January 27, 2022, Clyde A. Welch, Jr. filed a lawsuit against Defendants in Civil Action No. 1:22-cv-00031 in the United States District Court for the Eastern District of Texas, Beaumont Division ("Welch Lawsuit"). Three additional cases were consolidated into this action. Defendants filed motions to transfer venue in the Welch Lawsuit, related to the four Plaintiffs. Each motion to transfer included a Declaration of Amshuman Ramachandran ("Declarant") in

support thereof. On September 13, 2022, the Court entered a Memorandum and Order denying the motions to transfer. Plaintiff respectfully requests that this Court take judicial notice of this Memorandum and Order attached hereto as Exhibit A and incorporated herein by reference.

The Court found that Capital One did not meet their burden to prove that the fundamental elements of valid and enforceable contracts, including mutual assent, were satisfied. (Exhibit A at p. 12). In the Welch Lawsuit, the Court's ruling on a Capital One's similar motions to transfer venue analyzed the case law on whether or not a valid contract had been formed between the parties, stating:

> A court will enforce a forum-selection clause only if there is a valid contract between the parties at the outset. In this instance, this court need not undertake a choice-of-law analysis before determining the existence of an alleged contract because both forums' bodies of law lead this court to the same conclusion. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 187 n.2 (5th Cir. 2018) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis.") (citing *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005)). There is no conflict between relevant Texas and Virginia contract law regarding mutual assent. *See Moorman v. Blackstock, Inc.*, 661 S.E.2d 404 (Va. 2008) (holding that "mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts. Until the parties have a distinct intention common to both . . . there is a lack of mutual assent and, therefore, no contract.").
>
> The essence of a contract is mutual assent or agreement. *Gutierrez v. Rios*, 621 S.W.3d 907, 913 (Tex. App.—El Paso 2021, no pet.); *Nat'l Cas. Co. v. Lane Express, Inc.*, 998 S.W.2d 256, 264 (Tex. App.—Dallas 1999, pet. denied); *Turner-Bass Assocs. of Tyler v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.—Tyler 1996, writ denied); *see Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 446 (5th Cir. 2018) (citing *Baylor Uni v. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007)). Hence, "[f]or an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms." *Tamasy v. Lone Star Coll. Sys.*, 635 S.W.3d 702, 709 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App.—Houston [14th Dist.] 2002, no pet.)); *see Wells v. Hoisager*, 553 S.W.3d 515, 522 (Tex. App.—El Paso 2018, no pet.); *Palavan v. McCulley*, 498 S.W.3d 134, 141 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did, not on their subjective state of mind." *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir.

2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)); *Paragon Asset Co. Ltd v. Gulf Copper & Mfg. Corp.*, No. 1:17-CV-203, 2022 WL 970551, at *30 (S.D. Tex. Mar. 31, 2022); *Bexar-Mar Int'l, LLC v. Combi Lift GmbH*, No. 01-19-00171-CV, 2020 WL 4979527, at *6 (Tex. App.—Houston [1st Dist.] Aug. 25, 2020); *Wells*, 553 S.W.3d at 522. "Mutual assent can arise from the parties' acts and conduct from which one party can 'reasonably draw the inference of a promise.'" *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ) (citing *Haws & Garrett Gen. Contractors Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609-10 (Tex. 1972)); *see Ye v. Zhang*, No. 4:18-CV-4729, 2021 WL 5862093, at *13 (S.D. Tex. June 8, 2021); *Harford Duracool, LLC v. Powerhouse Marine Int'l Ltd.*, No. H-09-1199, 2010 WL 11651992, at *5 (S.D. Tex. June 9, 2010).

Generally, the party seeking to enforce a contractual provision bears the burden of proving the existence of a valid contract and its terms. *See Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (stating that a party seeking to prove the existence of a valid contract in Texas must show an offer, an acceptance, a meeting of the minds, consent from each party, and that the parties executed and delivered the contract with the intent that it be mutual and binding) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018)). This is true even where contracts are entered into online. "While new commerce on the internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *One Beacon Inc. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011); *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 193 n.6 (Tex. App.—Dallas 2013, no pet.).

Here, the existence of valid contracts regarding CreditWise between Plaintiff and Capital One is disputed.

(Exhibit A at pp. 10-12). In this case, as in the *Welch* case, Defendants have failed to put forward any evidence of mutual assent or agreement between the parties. Defendants' Declarant offers no evidence of an offer, an acceptance, a meeting of the minds, consent from each party, or that the parties executed and delivered the contract with the intent that it be mutual and binding. *See Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (stating that a party seeking to prove the existence of a valid contract in Texas must show an offer, an acceptance, a meeting of the minds, consent from each party, and that the parties executed and delivered the contract with the intent that it be mutual and binding) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018)). As a result, the Court should find that Defendants have failed to meet their burden to prove the existence of a valid contract and its terms.

Defendants claim: "Capital One's records show that Plaintiff enrolled in CreditWise on September 6, 2018. (ECF No. 58 at 2.)" (*See* ECF 102 at p. 2, ¶ 3). However, most of these so-called records are not records at all but "re-creations," "simulations," or "replicas" of alleged records created by Capital One employees who were not employed in 2018, have no personal knowledge of the CapitalOne.com or GM Family Card websites, where it is undisputed that Plaintiff conducted most of her business with Defendants. (ECF 56, Young Depo. Tran. at 18:12-16).

Defendants have wholly failed to produce any actual credible evidence of the alleged contract between the parties, nor have they produced a record of Plaintiff's alleged consent to the CreditWise terms and conditions. Plaintiff vehemently stated in her Declaration: "I have never had the intention to or an interest in signing up for credit monitoring with any company. I have even turned down opportunities to get free credit monitoring after being advised of data breaches exposing my personal financial information. … I never intended to enroll in CreditWise. To my knowledge, I did not see, read, or agree to any Terms and Conditions for CreditWise. … I did not fill out a form for CreditWise to provide the information for the CreditWise Profile …. I have not provided written consent by hand or electronic signature to access my credit reports or provide ongoing credit monitoring either before or after filing bankruptcy." Plaintiff goes on to state unequivocally, "If I had to leave my credit card account page and log in to the CreditWise website to see my credit score, I would not have done that. I never had a login for CreditWise, as I did not believe I had a CreditWise account. Had I been presented with the terms shown … stating that I was agreeing to let them pull my credit report monthly and also use it to market products to me, I would not have clicked agree, as I never wanted to and never had the intention to sign up for any credit monitoring services nor would I have wanted them to market products to me." (ECF 46, Young Declaration at pp. 2-3, ¶¶ 5-6, 10).

For there to be a contract under either Texas or Virginia law, there must be an offer and acceptance, yet Defendants have not produced the alleged "offer" nor the acceptance of an offer other than to come to the factual conclusion that because Plaintiff received 125 unsolicited emails sent to her by Capital One or Capital One/CreditWise that a contract was formed. These emails prove nothing. Plaintiff explains her handling of the emails in her Declaration: "The allegation that I opened 125 emails is technically possible. His [Amshuman Ramachandran] declaration does not state the dates the 125 emails were opened. However, I would have looked at Capital One emails to see if they had important information about my Capital One/GMcard.com credit card account. If not, I would have deleted it. After the bankruptcy, I was confused why I was getting account emails since I believed the account was closed. I thought CreditWise emails were advertisements/junk, so I deleted them because I did not want to use their services and did not believe I was signed up for any services." (ECF 46 at p. 2, ¶ 7). So, there is a genuine factual issue as to whether there was an offer, acceptance and a meeting of minds. Defendants have not and cannot produce an "offer" or "acceptance" of a contract, they simply keep repeating their factual conclusion that such a contract exists and back it up with replica webpages and website coding (ECF 57, Ramachandran Depo. Tran. at 83:7-24), as well as speculation about Plaintiff's actions and intent, none of which constitute credible and competent proof a contract between the parties.

Defendants so-called irrefutable proof of an alleged CreditWise contract rests solely on the various Declarations and the deposition of Amshuman Ramachandran. Declarant's representations, however, lack credibility, lack personal and relevant knowledge and expertise, and rely on conclusory facts, and legal conclusions. In his Supplemental Declaration, Mr. Ramachandran bases his explanation of the alleged CreditWise enrollment process on Exhibits 1-3 attached to his declaration. (ECF 39 at pp. 2-3, ¶¶ 10-15). Based on the deposition testimony of the Declarant, he was not working with CreditWise until 2021, long after Plaintiff's alleged

enrollment. (ECF 57, Ramachandran Depo. Tran. 13:1-13). Further, he testified that the CapitalOne.com website is beyond the scope of his role. (ECF 57, Ramachandran Depo. Tran. at 22:10-20). Also, he did not personally write either the April 19, 2022 Declaration (ECF 14 filed on April 19, 2022) or his Supplemental Declaration (ECF 39 filed on June 30, 2022). (ECF 57, Ramachandran Depo. Tran. at 67:2-5, 67:20-68:5). Additionally, his testimony is largely based on information provided by four or five other CreditWise employees, none of whom were employed at the time Plaintiff was allegedly enrolled in CreditWise. (ECF 57, Ramachandran Depo. Tran. at 16:6-21, 32:7-35:11).

Moreover, Declarant admits that Exhibit 1 to his Supplemental Declaration (ECF 39 at Exhibit 1) is an incomplete replica of the alleged CreditWise sign-in page related to customers with an existing Capital One account and that Defendants could have attached a complete replica if they chose to do so. (ECF 57, Ramachandran Depo. Tran. at 84:5-86:16). Since such exhibit is not the original and has not been properly authenticated, it is irrelevant and incompetent as evidence in support of Defendants' Motion to Transfer Venue.

With regard to Exhibit 2 to his Supplemental Declaration (ECF 39 at Exhibit 2), Declarant admits that he does not know if the document is a complete replica of Exhibit 2 or not, as it appears to be cut-off at the bottom, but admits that Defendants could have attached a complete replica of what Exhibit 2 purports to be if they chose to do so. (ECF 57, Ramachandran Depo. Tran. at 87:13-18, 136:13-137:12, 143:11-144:11). Since such exhibit is admittedly not the original and has not been authenticated, it is irrelevant and incompetent as evidence in support of Defendants' Motion to Transfer Venue.

In his deposition, Mr. Ramachandran testified with regards to Exhibit 3: (1) that he did not know what computer language the code was written in, (2) that he did not know which URLs the code was written on as of September 5, 2018, the day before Plaintiff allegedly enrolled in

CreditWise, and (3) that he did not know if the hyperlink to the terms and conditions page allegedly associated with the code was functioning on September 5, 2018. (ECF 57, Ramachandran Depo. Tran. at 88:18-89:22, 108:13-17, 132:2-22). So, the only thing this testimony establishes is that Exhibit 3 is more speculation and irrelevant to the contract issue at hand. Additionally, he stated that there was nothing in the code that tells us the date and time the code was used on the website. (ECF 57, Ramachandran Depo. Tran. at 90:8-12). Also, he stated that there was nothing in the code that tells us whether the code was used on the Capital One or CreditWise websites and that there is nothing that tells us when the code was live on the CreditWise website. (ECF 57, Ramachandran Depo. Tran. at 90:8-21). He further agreed that we cannot tell from the document that, on September 5, 2018, this code was applicable to anything. (ECF 57, Ramachandran Depo. Tran. 90:22-91:1). Next, Mr. Ramachandran testified he is not aware of the author of the code in Exhibit 3 to his Supplemental Declaration or the date it was created. (ECF 57, Ramachandran Depo. Tran. at 134:7-11). This indicates that he lacks personal knowledge of the alleged code described in Exhibit 3 to his Supplemental Declaration. Therefore, Exhibit 3 to his Supplemental Declaration is pure speculation.

Defendants are relying solely on Declarant's testimony to support the allegation that "[a]t no time did the coding logic allow an existing Capital One account holder to subscribe to (enroll in) CreditWise unless and until that account holder accepted the CreditWise Terms and Conditions." (ECF 39 at p. 3, ¶ 15). Given the above described deposition testimony, there is simply no basis for Declarant's conclusion regarding this statement. Furthermore, Clyde A. Welch, Jr., Jana L. Foster and Kiersten K. Scott each filed declarations in the Welch Lawsuit stating that they did not click to agree to the CreditWise terms and conditions. (*See* Exhibit B, Declaration of Jim Manchee, at Exhibits 1-3, attached hereto and incorporated herein by reference). In a separate lawsuit, Lori Bernard Wilprit sued the same Defendants in Civil Action No. 3:22-cv-00452 in the

8

United States District Court for the Northern District of Texas, Dallas Division, and she also filed a declaration stating that she did not click to agree to the CreditWise terms and conditions. (*See* Exhibit B at Exhibit 4). At minimum, this raises a fact issue as to whether or not Defendants' CreditWise enrollment system works as the Declarant states.

Also, Mr. Ramachandran demonstrated a clear lack of knowledge of the CreditWise enrollment process when he testified that he did not know if Defendants' enrollment process recorded a customer's acceptance of the CreditWise terms and conditions during the enrollment process on September 5, 2018. (ECF 57, Ramachandran Depo. Tran. 114:5-115:7). This is a fundamental question and his Supplemental Declaration does not address this issue. If Defendants had such records, presumably it would have been attached to Declarant's first Declaration or second Declaration; however, the fact that he is unaware of whether or not the enrollment process records the acceptance of the CreditWise terms and conditions creates a fact question as to whether or not Defendants have a record of Plaintiff accepting the CreditWise terms and conditions or if the enrollment system had the capacity to record a customer's acceptance of terms and conditions on September 5, 2018.

Further, Mr. Ramachandran testified that he reviewed metadata, which was not included as an exhibit for his testimony, related to the alleged dates and times that he stated Plaintiff logged into CreditWise. (ECF 39 at pp. 5-6, ¶¶ 23-25; ECF 57, Ramachandran Depo. Tran. at 77:11-79:7). As a result of the failure to attach the relevant metadata upon which Declarant relied, Plaintiff asserts that neither Plaintiff nor the Court can properly assess the credibility of his statements that are based on said metadata. Additionally, Mr. Ramachandran testified that Defendants do not have copies of any of the emails referenced in paragraph 24 of his Supplemental Declaration, only metadata that cites an alleged template related to any emails allegedly sent to Plaintiff. (ECF 57, Ramachandran Depo. Tran. at 62:13-63:4; 99:9-101:9).

With regard to Plaintiff's deposition, Defendants apparently were under the mistaken belief that Exhibit 1 to Mr. Ramachandran's Supplemental Declaration was the login page used by Plaintiff to access her GM Card-Capital One account in 2018. (ECF 56, Young Depo. Tran. at 18:12-16, 34:17-22). Plaintiff explained that she searched for the GM Extended Family Card to find her account login and the landing page included a section to login into her account and another part of the page was related to GM card rewards. (ECF 56, Young Depo. Tran. at 18:17-23). Plaintiff further testified that she did not encounter any reference to CreditWise when she would access her online account prior to filing bankruptcy. (ECF 56, Young Depo. Tran. at 48:7-25). Plaintiff further testified that she could not recall seeing Exhibit 2 to the Supplemental Declaration of Mr. Ramachandran (ECF 39 at Exhibit 2) prior to its filing with the Court. (ECF 56, Young Depo. Tran. at 39:12-40:25).

Finally, Declarant is not competent to testify regarding Plaintiff's intent or Plaintiff's alleged actions and communications with Capital One, or her interactions, if any, with the CreditWise website. Declarant has no personal knowledge regarding such matters. Hence, there is actually no credible or admissible evidence provided to contradict Plaintiff's clear testimony that she did not enter into a contract with Defendants for the CreditWise credit monitoring services and was not aware such a contract had been offered to her.

Declarant's credibility is further diminished by the fact that he has signed seven (7) declarations under penalty of perjury regarding the operation of the CapitalOne.com website and the CreditWise enrollment process and omitted many crucial facts: (1) the very short period of time he worked with CreditWise, (2) that he knew nothing about the CapitalOne.com or GM Extended Family Card websites, (3) that none of the Capital One employees he consulted with in preparation for his declarations were employees in 2018-2019, and (4) that many of the exhibits to his Declarations that he relied upon were simulations and replicas.

Most importantly, Declarant fails to specifically assert the manner and method in which Plaintiff allegedly enrolled in CreditWise and never addresses the undisputed fact that Plaintiff only accessed her Capital One account through the Capital One/GM Extended Family Card website or the Capital One credit card mobile app. (ECF 46 at p. 2, ¶¶ 5-6). Defendants provide no explanation, let alone actual evidence, of how Plaintiff could have signed up for CreditWise from this platform or if there was even a CreditWise working link on such webpage since none of the Exhibits to the Declarant's previous declarations provide any evidence of Plaintiff's alleged login to CreditWise. (ECF 57, Ramachandran Depo. Tran. at 78:14-18). Declarant only speculates that Plaintiff would have seen a "hyperlink" to terms and conditions and would have had to accept them but fails to describe precisely how Plaintiff allegedly interacted with CreditWise as Defendants allege she did on September 6, 2018. Declarant only assumes that Plaintiff accessed CreditWise through a link from the GM Extended Family Card website or her Capital One credit card app on such date and such allegation in his Declaration is based on that factual assumption.

Defendants repeatedly claim the facts they assert are unrefuted when they have been highly disputed in Plaintiff's FAC, the Declaration of Kacy Lynn Young, Plaintiff's deposition, Plaintiff's various objections to the Declarations of Amshuman Ramachandran and other pleadings in this case.

**B.   Plaintiff's FCRA Claims Are Not Impaired Even if a Contract is Found to Exist Between the Parties.**

In Defendants' Supplemental Memorandum In Support of Motion to Dismiss (ECF 102), Capital One misrepresents that Plaintiff's FCRA claims are dependent on whether or not a contract exists or existed between Plaintiff and Defendants. In her FAC, Plaintiff pled that Defendants failed to even attempt to obtain and record Plaintiff's written consent related to the CreditWise terms and conditions and that they had no proof of consent to give to Experian or TransUnion that Defendants had been authorized to obtain Plaintiff's consumer reports when the underlying

11

debtor/creditor relationship was terminated by the bankruptcy discharge. As a result, Defendants did not have a permissible purpose or consent to access Plaintiff's consumer reports under 15 U.S. Code § 1681b(a)(2). (ECF 16 at pp. 24- 25, ¶ 128).

Defendants ignore the fact that pursuant to the requirements of the FCRA, Defendants could not legally access her consumer reports without "written permission" of the consumer. 15 U.S. Code § 1681b(a)(2). Nowhere have they shown they had obtained Plaintiff's written permission to pull her credit reports. Nor have Defendants produced a written consent to access her consumer reports signed by Plaintiff. Moreover, the requirements of 15 U.S. Code § 1681b(a)(2) apply regardless of whether or not a contract exists between the parties.

Nowhere in either of the Declarations of Amshuman Ramachandran filed in this case was Plaintiff's written or electronic signature authorizing Defendants to access Plaintiff's credit reports. Furthermore, Defendants' CreditWise credit monitoring system design did not comply with 15 U.S.C. § 7001(e) regarding a consumer's electronic signature required to authorize credit pulls. When a consumer gives written instructions electronically, such written instruction must be a "record" that must be "capable of being retained and accurately reproduced later for reference." Without a compliant record of each consumer's written consent, Defendants' CreditWise system violates the FCRA. Based on such design, even customers who deliberately enrolled in CreditWise did not provide effective written authorization to Defendants to access their credit reports, and as a result, all of these consumer credit pulls would be impermissible. Furthermore, discovery into Capital One's motives for leaving out a click repository and operating a non-compliant credit monitoring system will likely reveal that it was done on purpose to minimize the risk of customers' understanding that a contract was being offered and rejecting it; such rejections interfering with Defendants' marketing and diminishing their revenue and profits.

If Capital One's CreditWise enrollment system was compliant with the requirements of 15 U.S. Code § 1681b(a)(2), the FCRA, and 15 U.S.C. § 7001(e), the E-SIGN Act, Mr. Ramachandran would not have testified in his deposition in *this* case that he did not know if the CreditWise system recorded a click of the acceptance or rejection of the terms and conditions of enrollment into CreditWise. (ECF 57, Ramachandran Depo. Tran. at 114:5-11). They simply would have been attached to his Declaration.

Instead, his many and varied declarations in these cases attempt to explain how the CreditWise process allegedly worked at the time and the methods of enrollment that a person would have encountered had they intended to enroll in CreditWise. Mr. Ramachandran failed to explain how Plaintiff allegedly reached any CreditWise log-in screen or method by which she allegedly enrolled in CreditWise. Moreover, he did not explain in any Declaration or in his deposition how the alleged coding section was created, who created it, how, or whether he knew it was live and active and in use on any website at any time. When confronted with the fact that the Internet Archive records related to the CreditWise terms and conditions links on dates at or near the alleged times of Plaintiff's enrollment were showing error messages, Mr. Ramachandran testified that he was unaware as to whether or not the CreditWise terms and conditions links were active and working at the time of her alleged enrollment or at any other time. Additionally, he testified that he did not know of any method to verify whether or not these links were operational in any given time period before she attempted to enroll in 2019.

C. **Law of the Case Doctrine is Inapplicable as the Law of the Case Has Not and Could Not Be Established at This Juncture of the Case.**

Again, Defendants contend that the law of the case doctrine dictates that all claims based upon CreditWise's communications and credit report inquiries be dismissed as they were authorized by the agreement of the parties. Plaintiff asserts that the additional case law cited by Defendants relates to cases where the decision of an appellate court establishes "the law of the

case," and it was to be followed in all subsequent proceedings in the same case in the trial court or on a later appeal and, therefore, is in applicable to the facts of this case.

Defendants cite *Rash v. Hilb, Rogal & Hamilton Co.,* 251 Va. 281, 285, 467 S.E.2d 791, 794 (1996), for the proposition that "[T]he parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy." In this case, a chancellor heard evidence and made findings of fact which, under Virginia law, carries the same weight as a jury verdict. The chancellor's findings were the law of the case. In our case, the procedural posture is much different, we have a court which made a limited ruling on transferring the case without ruling on the underlying issues of whether or not a contract existed between the parties and if the alleged contract was valid. Defendants' cited case is inapplicable to the facts of our case as no jury trial has been held to establish the law of the case.

Further, Defendants attempt to stretch the "law of the case doctrine" to extend their argument that "[t]he Texas Court's decision that Plaintiff accepted the CreditWise Terms and Conditions was 'for the limited purposes of resolving the Motion to Transfer,' and that decision carries through and should be binding in this Court. In other words, that Plaintiff enrolled in CreditWise subject to the applicable Terms and Conditions was either expressly determined or 'necessarily implied' in Judge Lynn's ruling, and the law of the case doctrine applies to issues that were actually or impliedly decided in reaching that decision." (ECF 102 at p. 6). Of course, Defendants cite no applicable case law that would support their interpretation of the "law of the case" doctrine and the consequence of applying it would undermine the Texas court's deliberate limitation of the extent of its ruling.

Defendants cite *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Services U.S., LLC*, 469 F. Supp. 3d 505, 524 (E.D. Va. 2020), which involves rulings by an appellate court which established the "law of the case" for subsequent hearings regarding the same

case in bankruptcy court from where the appeal originated.  Again, Defendants' cited case law is inapplicable to this case as there has been no appeal or trial by which to establish the "law of the case."

Defendants' other cited case law, *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008), cert. denied, 555 U.S. 928 (2008), *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 225 (5th Cir. 2001), and *Devex Corp. v. General Motors Corp.*, 263 F. Supp. 17, 23 (D. Del. 1967), all involve cases where appellate court rulings were held to constitute the "law of case" for subsequent proceeding in a lower court.  *United States v. Lentz* is a criminal case where the appellate rulings were made and established the law of the case which in fact did not bar the trial court from reconsidering the admissibility of evidence in a subsequent trial.  *United States v. Lentz*, 524 F.3d 501, 528.  *Office of Thrift Supervision v. Felt (In re Felt)* also involved issues previously implicitly decided by the Court of Appeals on a previous appeal in the same matter.  *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 225 (5th Cir. 2001).  Plaintiff asserts that nothing in the case stands for the proposition that the "law of the case doctrine" applies to this case as there has been no appellate ruling and this case is the original proceeding.  In *Devex Corp. v. General Motors Corp.*, 263 F. Supp. 17, 23 (D. Del. 1967), the case related to patent infringement where the trial court was reversed by the Court of Appeals for the Seventh Circuit, where it found the patent valid and remanded the case to the trial court for further proceedings.  The case was subsequently transferred by the trial court to the United States District Court of Delaware.  In this matter, the "law of case" was established by appellate rulings of the Seventh Circuit and applied to subsequent lower court proceedings after the case was transferred.  Again, nothing in that case supports Defendants' argument that the "law of the case doctrine" is applicable to the facts of this case, where no trial or appeal has yet occurred.  Thus, Plaintiff argues that the "law of the case doctrine" is inapplicable to the Texas Court's Opinion (ECF 58) as it expressly limits its effect to

the Motion to Transfer Venue. This makes sense as full discovery has yet to be conducted in the case, and it would have been prejudicial to Plaintiff to make a final determination on such an important issue without full discovery.

Finally, "courts also recognize that the principle of law of the case is not absolute nor inflexible. Additionally, a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, ..." *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S., LLC*, 469 F. Supp. 3d 505, 524-26 (E.D. Va. 2020). In the instant case, the Texas court would certainly have the right to limit the import of its decision to the current motion before the Court in its discretion. Moreover, Defendants have failed to cite any authority under the "law of the case doctrine" or any other theory that supports their assertion that the Texas Court's limited ruling on Defendants' Motion to Transfer Venue extends beyond its own limited terms or that said ruling would constitute the "law of the case."

**D.     No Contract Existed Between the Parties.**

Even if the Court were to find that there was a contract between Plaintiff and Capital One CreditWise, it should find that the contract was terminated as of March 2020. A contract may continue to remain in force after the termination date only if the parties renew the terms of the original contract. *Fremeau v. Credit One Bank, N.A., et al.*, U.S.D.C. E.D. Va. Civil Case No. 2:19cv254, 2020 WL 201046 at *5. CreditWise is a service provided by Capital One. (ECF 37 at Ex. 4). Plaintiff disputes signing up for CreditWise as she did not have the CreditWise app, log into the CreditWise website or have a login for CreditWise. (ECF 46 at p. 3, ¶ 11).

Plaintiff filed for Chapter 7 bankruptcy in March of 2020. (ECF 46 at p. 1, ¶ 3). Capital One closed Plaintiff's account on or about March 2020. (*See* Exhibit C, Supplemental Declaration of Kacy Lynn Young, at p. 1, ¶ 5, attached hereto and incorporated herein by reference). Plaintiff did not reaffirm the Capital One account. (Exhibit C at p. 1, ¶ 4). Plaintiff received her bankruptcy

discharge on July 28, 2020, which applies to the Capital One account. (ECF 46 at p. 1, ¶ 4). Plaintiff did not open any additional Capital One accounts after her bankruptcy. (Exhibit C at p. 2, ¶ 7). Because the Capital One account terminated in March 2020, and the parties did not renew the terms, nor did Plaintiff open any new Capital One accounts, the contract with Capital One was terminated in March 2020.

## II. FORUM SELECTION CLAUSE

Plaintiff maintains that there was no contract between the parties. If this court finds there is a contract, Plaintiff agrees with Capital One that the forum selection clause is mandatory.

## III. TEXAS LAW GOVERNS THE RESOLUTION OF THE ISSUES IN THE BRIEFS

A federal court resolving a transferred matter while sitting in diversity applies the laws, including choice of law rules, of the transferor state. *Zaklit v. Global Linguist Solutions, LLC*, U.S.D.C. E.D.Va. Civil Case No. 1:14cv314, 2014 WL 3109804 at *5 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). To rebut this, Defendants cite the Supreme Court finding that a valid forum selection clause prevents the court in the selected venue from applying the law of the transferor state. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 66-67 (2013) (emphasis added). The forum selection clause at issue in this case is invalid absent a contract between the parties. Plaintiff denies entering into a contract with CreditWise and Defendants failed to demonstrate that she consented to the CreditWise terms and conditions.

Texas uses the "most significant relationship" test from the *Restatement (Second) of Conflict of Laws*. *United States of America for the Use, and Benefit of EP Employment Services, LLC v. Build Masters Construction, LLC*, U.S.D.C. W.D.Tx. Civil Case No. 3:19cv362, 2020 WL 10316671 at *2. "The test considers: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified

expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Id.* at **2-3.

CreditWise conducts services in Texas, where Plaintiff is a resident and was located at all relevant times. The state of Texas has a direct and important interest in protecting Texas residents from fraudulent, deceptive or misleading conduct by debt collectors, as well as protecting Texas residents' right to privacy in their credit history.

Application of Virginia law would yield the same result should the court choose to apply the law of the forum selected by CreditWise. Virginia uses the *lex loci delicti* doctrine, which applies the law of the state where the wrongful act took place, "wherever the effects of that act are felt." *Id.* at 521-522. In this case, Plaintiff was in Texas each time her credit was pulled by CreditWise. Plaintiff received emails from CreditWise in Texas. All of the effects of CreditWise's actions were felt by the Plaintiff in Texas. Therefore, Texas law governs whether there is a valid, enforceable contract between the parties.

Although Virginia courts view choice-of-law provisions favorably, they may not enforce a choice-of-law provision if "there was no reasonable basis for the parties' choice or where one of the parties was misled into agreeing to the provision." *Faltings v. Int'l Bus. Machs. Corp.*, No. 87-1123, 1988 WL 83316, at *3 (4th Cir. Aug. 4, 1988) (unpublished table decision). As discussed above, Defendants have not established that Plaintiff saw the CreditWise terms and conditions, let alone agreed to them. She did not have a CreditWise login and she did not believe she had a CreditWise account. (ECF 46 at p. 3, ¶ 10). If Plaintiff clicked a button that Capital One used to create a CreditWise account for her, she was misled into doing so.

**CONCLUSION**

Defendants' Renewed Motion to Dismiss fails in its entirety based on law and fact. Defendants' failure to mention and address many of the specific facts pled in Plaintiff's FAC with regard to her claims and the issues at bar render Defendants' arguments fundamentally flawed. Plaintiff has pled facts in her FAC sufficient to show all of her claims asserted therein have substantive plausibility and are legally cognizable.

Plaintiff respectfully requests the Court deny Defendants' 12(b)(1) and 12(b)(6) Renewed Motion to Dismiss in its entirety and retain this case on the docket. If the Court decides to grant any portion of Defendants' Renewed Motion to Dismiss, Plaintiff requests leave of Court to amend her complaint.

Respectfully submitted,

*/s/ Jason M. Krumbein*
Jason M. Krumbein, Esq. VSB#43538
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Dr. Suite 201
Richmond, VA 23230
804.592.0792
804.823.2565 (fax)
JKrumbein@KrumbeinLaw.com (e-mail)

James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

**COUNSEL FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2023, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system pursuant to the Federal Rules of Civil Procedure.

*/s/ Jason M. Krumbein*
Jason M. Krumbein