**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| KACY LYNN YOUNG )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>CAPITAL ONE BANK USA, N.A. and )<br>CAPITAL ONE BANK, N.A., )<br>)<br>*Defendants*. ) | Case No. 1:22-cv-01326 (PTG/WEF) |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Defendants Capital One Bank USA, N.A. and Capital One, N.A.'s Renewed Motion to Dismiss. Dkt. 80. Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Essentially, Defendants argue that the Court lacks subject matter jurisdiction to hear this case because Plaintiff fails to identify a concrete injury and thus does not have standing. In the alternative, Defendants contend that Plaintiff fails to state a claim as a matter of law as to any of her claims. After the parties filed several briefs in support of and in opposition to the Renewed Motion to Dismiss, the Court heard oral argument on October 19, 2023. *See* Dkt. 101. For the reasons that follow, the Court finds that Plaintiff does have standing but fails to state a claim as a matter of law, and thus grants Defendants' Renewed Motion to Dismiss.

## I. Relevant Facts

On March 17, 2020, Plaintiff filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas and listed a Capital One credit card as a nonpriority unsecured claim. Dkt. 16 ("Am. Compl.") ¶ 14. On July 28, 2020, the bankruptcy court issued an order

granting Plaintiff a discharge that provided: "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally." *Id.* ¶¶ 14, 17.

Plaintiff alleges that between August 10, 2021 and March 22, 2022, Defendants sent her automated emails related to her credit card account and her account with CreditWise, Defendants' credit monitoring service. *Id.* ¶¶ 1, 30, 33–65. These emails prompted Plaintiff to verify her phone number to receive text alerts and apply for a new credit card; notified her about changes and alerts related to her credit report and score; and gave Plaintiff tips on managing her credit.[1] *Id.*

On March 21, 2022, Plaintiff instituted this action in the U.S. District Court for the Northern District of Texas. Dkt. 1. On April 19, 2022, Defendants filed a Motion to Transfer the action to the U.S. District Court for the Eastern District of Virginia. Dkt. 13. Before disposing of the Motion to Transfer, the U.S. District Court for the Northern District of Texas allowed the parties to engage in limited fact discovery for the purpose of determining whether an enforceable contract existed between the parties. Dkt. 43. On November 20, 2022, this case was transferred to the U.S. District Court for the Eastern District of Virginia on Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a), pursuant to a mandatory forum selection clause in the terms and conditions of Capital One's CreditWise program. *See* Dkts. 58, 59.

On May 4, 2022, Plaintiff filed the Amended Complaint. Count One alleges Defendants violated the Texas Debt Collection Practices Act ("TDCPA") by "threatening" and using misrepresentations and deceptive means to collect a debt covered by the discharge order and to obtain Plaintiff's financial information. Am. Compl. ¶¶ 147–51 (citing Tex. Fin. Code § 392.304(a)(8), (a)(19)). Count Two alleges Defendants invaded her privacy under the common

---

[1] Plaintiff holds two accounts associated with Capital One: a credit card account related to the debt that was discharged by the bankruptcy court (hereinafter "credit card account") and an account with CreditWise, a credit monitoring service (hereinafter "CreditWise account").

2

law by sending her automated emails indicating Defendants were accessing her credit report. *Id.* ¶¶ 152–58. Count Three alleges Defendants willfully or negligently violated the Fair Credit Reporting Act ("FCRA") by viewing and using her credit report without a permissible purpose under the Act. *Id.* ¶¶ 159–79 (citing 15 U.S.C. §§ 1681n, 1681o). Plaintiff alleges that Defendants' actions have caused her severe mental anguish and emotional distress. *Id.* ¶ 182.

## II.   Legal Standard

"The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). As the Fourth Circuit has recognized, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3) (providing that the court may dismiss for lack of subject matter jurisdiction at "any time")). "Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). When assessing whether the complaint alleges facts upon which jurisdiction can be based, the district court must treat the facts alleged in the complaint as true and grant the motion under Rule 12(b)(1) if the complaint fails to allege sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint[,]" drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (alterations in original) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

### III.  Analysis

Before the Court can address the Renewed Motion to Dismiss, the Court must determine which state's choice of law governs the dispute between the parties. That question turns on whether there is a valid and enforceable contract between the parties with respect to the CreditWise account and the interplay between any contractual choice of law and mandatory forum selection provisions. The Court starts its analysis with this issue.

#### A. An Enforceable Contract Exists Between the Parties

"The essential elements of a contract are offer and acceptance, with valuable consideration." *Lapham v. Trolley Pub of N.C., LLC*, No. 1:16-cv-469, 2017 WL 1064674, at *2 (E.D. Va. Feb. 9, 2017) (quoting *Lawson & Frank, P.C. v. Bettius*, 2004 WL 3466347, at *4 (Va. Cir. Ct. 2004)). Defendants argue that there is a valid, enforceable contract between the parties. Dkt. 102 at 4–9. Plaintiff counters that there is insufficient evidence to demonstrate the existence of such a contract. Dkt. 106 at 2–11. This Court, in agreement with the transferor court, finds that there is an enforceable contract between the parties. *See* Dkt. 58 at 4–7.

4

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Jensen v. Int'l Bus. Machs. Corp.*, 454 F.3d 382, 388 (4th Cir. 2006) (quoting Restatement (Second) of Contracts § 24). Defendants argue that their offer to Plaintiff was to provide a CreditWise credit score and other information about a consumer's credit health, an offer which is evident on CreditWise's webpage requesting acceptance of CreditWise's Terms and Conditions as well as the Terms and Conditions themselves. Dkt. 108 at 5–6. The relevant Terms and Conditions state, "We use your credit information to provide you with credit education and alerts. We may also look to match you with Capital One products we think you might like, and to see if you are eligible for these products." Dkt. 37-5 at 2. The webpage requesting acceptance of CreditWise's Terms and Conditions also states, "Your CreditWise score is a good measure of your credit health . . . We may also tell you about some Capital One products we think might interest you." Dkt. 37-3 at 2.

In support of its earlier Motion to Transfer, Defendants submitted the declaration of Amshuman Ramachandran, a Capital One Senior Business Manager, who declared that Plaintiff had enrolled in CreditWise on September 6, 2018. Dkt. 14 at 3; *see also* Dkt. 39-2 at 2. Mr. Ramachandran testified that as chief of staff of CreditWise, he has purview over all CreditWise processes to include enrollment, unenrollment, accepting offers to use CreditWise, using the CreditWise app, and receiving emails. Dkt. 54-1 at 14:13–15:24. Mr. Ramachandran also declared that "[a]t no time did the coding logic allow an existing Capital One account holder to subscribe to (enroll in) CreditWise unless and until that account holder accepted the CreditWise Terms and Conditions." Dkt. 37-1 at 3. This Court can plausibly infer that Defendants offered Plaintiff CreditWise's services—namely, providing a CreditWise credit score and other information about

5

a consumer's credit health—via its Terms and Conditions and the CreditWise webpage on or before September 6, 2018.

"[F]or an agreement to be binding, the parties must have assented to its terms. This assent . . . may be inferred from the conduct of the parties." *Bankers Credit Serv. of Vt., Inc. v. Dorsch*, 343 S.E.2d 339, 341 (Va. 1986). CreditWise's Terms and Conditions state, "By using CreditWise, you agree to these terms (the 'Agreement')." Dkt. 37-5 at 2. The webpage requesting acceptance of CreditWise's Terms and Conditions also states, "By selecting Accept, I'm okay with the CreditWise terms." Dkt. 37-3 at 2. Mr. Ramachandran declared that Plaintiff enrolled in CreditWise on September 6, 2018 and logged into her account on fourteen dates following the date of enrollment. Dkt. 37-1 at 2, 5–6. Plaintiff also opened over 125 emails sent by Capital One relating to her CreditWise account. *Id.* at 6.

Plaintiff's only rebuttal to Defendants' evidence of acceptance is that "[t]o [her] knowledge, [she] did not see, read, or agree to any Terms and Conditions for CreditWise." Dkt. 46 at 2. The clear language of acceptance in CreditWise's Terms and Conditions and on its website together with Plaintiff's conduct—as demonstrated by Defendants' evidence outlining the date of her enrollment and her opening of CreditWise's emails—outweighs Plaintiff's statement that she does not remember seeing or agreeing to any CreditWise Terms and Conditions. In addition, Plaintiff admitted that she "may have clicked" an offer from Defendants to view her credit score. *Id.* This refutes Plaintiff's argument that "Defendants have failed to put forward any evidence of mutual assent or agreement between the parties." Dkt. 106 at 4. Thus, this Court agrees with Defendants that Plaintiff's acceptance of CreditWise's Terms and Conditions can be inferred through her conduct on September 6, 2018, on the date of her enrollment in CreditWise. *See Dorsch*, 343 S.E.2d at 341.

"Consideration is, in effect, the price bargained for and paid for a promise." *Brewer v. Nat'l Bank of Danville*, 120 S.E.2d 273, 279 (Va. 1961). Defendants argue that CreditWise agreed to grant Plaintiff a license to receive the benefits of its service in exchange for Plaintiff's agreement to its Terms and Conditions. Dkt. 102 at 8–9 (citing Dkt. 37-5 at 2–4). Plaintiff does not contest that the CreditWise services constitute good and valuable consideration. Thus, the Court finds that Plaintiff concedes this argument.

To support her position that there is no valid, enforceable contract between the parties, Plaintiff directs the Court's attention to the court's decision in *Welch v. Capital One Bank, N.A.*, No. 1:22-cv-31 (E.D. Tex. Sept. 13, 2022). *See* Dkt. 106 at 2–4. In *Welch*, the court found that the same Defendants named here did not meet their burden to prove the elements of a valid and enforceable contract between the parties. Dkt. 106-1 at 12 ("[W]hether valid contracts for CreditWise exist between the parties is a fact issue."). The September 13, 2022 Order, however, is based only on the pleadings. Here, the transferor court permitted discovery prior to its ruling as to whether a valid, enforceable contract existed between the parties. *See* Dkt. 43. Thus, the transferor court had—and this Court currently has—an ample factual basis to determine whether a valid, enforceable contract existed between the parties.

Plaintiff also argues that even if there was a contract between herself and Defendants via CreditWise, it was terminated as of March 2020, when Capital One closed her account in connection to her filing for Chapter 7 bankruptcy. Dkt. 106 at 16. Plaintiff does not provide any legal or factual basis to support her argument that her agreement with CreditWise would be terminated by her Chapter 7 bankruptcy proceeding. Plaintiff's CreditWise account and contract was separate from Plaintiff's credit card account and contract. In addition, CreditWise is open to all consumers, regardless of whether they are Capital One customers. Dkt. 102 at 1–2 (citing

7

Capital One, *All about CreditWise*, https://www.capitalone.com/learn-grow/money-management/what-is-creditwise/ (Nov. 16, 2023)). Thus, it is not logical—and Plaintiff provides no legal support for the idea—that a service separate from Plaintiff's credit card with Capital One would be affected by her Chapter 7 bankruptcy filing that included her Capital One credit card. For the above reasons, this Court finds that a valid, enforceable contract existed between the parties per CreditWise's Terms and Conditions.

### B. The Forum Selection Clause Is Mandatory

"[W]here venue is specified with mandatory or obligatory language, the [forum selection] clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced[.]" *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 472 n.7 (4th Cir. 2018) (quoting *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). "Words such as 'shall,' 'only' or 'exclusive' are often indicators that a clause is mandatory rather than permissive." *Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009). Even if this language is not used, "the specific reference to the venue indicates mandatory language[.]" *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008) (quoting *Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*, 2003 WL 151852, at *4 (M.D.N.C. Jan. 8, 2003)).

Defendants argue that the forum selection clause in CreditWise's Terms and Conditions is mandatory because it contains obligatory language. Dkt. 102 at 10. The forum selection clause states, "You irrevocably and unconditionally submit to the jurisdiction and venue of the United States District Courts for the Eastern District of Virginia[.]" Dkt. 37-5 at 4. Though this clause does not use "language such as 'exclusive' or 'sole' . . . the specific reference to the venue indicates mandatory language[.]" *Gita Sports*, 560 F. Supp. 2d at 436. Plaintiff concedes that the forum selection clause is mandatory. Dkt. 106 at 17. Thus, this Court, in agreement with the transferor

court, finds that the forum selection clause contained in CreditWise's Terms and Conditions is mandatory.

### C. Virginia Choice of Law Governs

"Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 465–66 (E.D. Va. 2016) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999)). Unusual circumstances include "situations in which there was 'no reasonable basis for the parties' choice' or where one of the parties was misled into agreeing to the provision." *Faltings v. Int'l Bus. Machs. Corp.*, 1988 WL 83316, at *3 (4th Cir. Aug. 4, 1988) (unpublished table decision) (quoting *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F. Supp. 1140, 1144 & n.3 (W.D. Va. 1979)). Even in the absence of a choice of law provision, the U.S. Supreme Court has held that "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65–66 (2013). The U.S. Supreme Court explained, "Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship." *Id.* at 65.

Here, CreditWise's Terms and Conditions state, "These terms shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any portion of its choice of law principles that might provide for application of a different jurisdiction's law[.]" Dkt. 37-5 at 4. "[T]he 'phrase "governed by"' in a choice-of-law provision 'is a broad one signifying a relationship of absolute direction, control, and restraint,' which 'reflects the parties' clear contemplation that "the agreement" is to be completely and absolutely controlled by' the chosen law." *Run Then Sweet*, 224 F. Supp. 3d at 465–66 (quoting *Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1154 (Cal. 1992)). Thus, the language in the choice of law provision

9

demonstrates that the parties agreed that the CreditWise agreement and any related disputes would be governed by Virginia choice of law. In addition, the Court finds, and Plaintiff concedes (*see* Dkt. 83), that no unusual circumstances exist here that would cause the Court to give the choice of law provision less than its full effect. Thus, this Court, in agreement with the transferor court, finds that CreditWise's choice of law provision is enforceable such that Virginia choice of law governs.

### D. Plaintiff Adequately Alleges a Concrete Injury

Next, the Court considers Defendants' argument concerning lack of subject matter jurisdiction. *See, e.g.*, *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) ("[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" (quoting 2 James W. Moore, *et al.*, Moore's Federal Practice § 12.30[1] (3d ed. 1998))). Here, Defendants argue that Plaintiff's claim under the FCRA must be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing as she fails to plausibly allege an injury in fact. MTD at 2, 22–24; Dkt. 84 ("Reply") at 2, 9–16. The Court disagrees.

To establish standing, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). "The FCRA creates a private right of action . . . to recover 'any actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009). "Actual damages may include . . . damages for humiliation and mental distress." *Id.*; *see, e.g.*, *Miller v. Dish Network, LLC*, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (denying the defendant's motion to dismiss on standing grounds as to the plaintiff's FCRA claims where the plaintiff alleged that the defendant's "actions resulted in

'aggravation, irritation, loss of happiness and loss of enjoyment of old age, fear, worry, anger, tumult, frustration, vexation and emotional distress'").

Plaintiff contends that Defendants' unauthorized access to and use of her financial information caused "severe mental distress and emotional anguish," which manifested as fear, worry, anxiety, stress, headaches, fatigue, distraction, and insomnia. Am. Compl. ¶¶ 146, 156, 182; Dkt. 83 at 28. Plaintiff's allegations of mental and emotional distress reflect the plaintiffs' allegations in *Robinson*, 560 F.3d at 239, and *Miller*, 326 F. Supp. 3d at 61; those courts found that the plaintiffs adequately alleged an injury under the FCRA. *Welch v. Capital One*, No. 1:22-cv-31 (E.D. Tex. Jan. 14, 2023), the case submitted by Defendants as supplemental authority and which Defendants continue to rely upon in their Renewed Motion to Dismiss, also found that the plaintiffs adequately pleaded an injury in fact. *See* Dkt. 72 at 13–14 (discussing "severe mental distress and emotional anguish," causing "fear, worry, [and] anxiety" as well as "physical harm" like "severe headaches and insomnia"); *see also* Dkt. 81 at 14–15; Reply at 5–8. Thus, this Court finds that Plaintiff plausibly pleads an injury in fact and has sufficiently alleged standing.

E. **Plaintiff Fails to State a Claim Under the FCRA**

In the alternative, Defendants move to dismiss Plaintiff's claim under the FCRA on the grounds that Plaintiff fails to plead facts sufficient to support an FCRA claim. MTD at 2; Reply at 16–17.

Defendants are correct that Plaintiff fails to state a claim under the FCRA because Plaintiff's CreditWise account did not establish a debtor-creditor relationship with Capital One. *See* Reply at 16–17. Plaintiff had two accounts associated with Capital One: a credit card account related to the debt that was discharged by the bankruptcy court, *see* Am. Compl. ¶ 14, and the account with CreditWise. As it was not included in the bankruptcy, Plaintiff's CreditWise account remained open. Because Plaintiff's CreditWise account is not a credit account, Plaintiff cannot

establish a debtor-creditor relationship with Capital One with respect to that account. Under the CreditWise Terms and Conditions, Capital One was authorized to make the credit pulls that form the basis of Plaintiff's FRCA claim. *See* Dkt. 37-5. The Terms and Conditions state, "You are asking CreditWise to get your credit information and/or score from one or more credit reporting agencies. We'll pull fresh credit report information for you periodically unless you cancel your CreditWise account." *Id.* at 2. Thus, under 15 U.S.C. § 1681b(f)(1), Capital One obtained Plaintiff's consumer report "for a purpose for which [it] is authorized to be furnished[.]" Because the Court finds that a contractual relationship existed between Plaintiff and Defendants via Plaintiff's acceptance of CreditWise's Terms and Conditions, Defendants were permitted to review Plaintiff's account information and pull her credit report. As Plaintiff is unable to allege a creditor-debtor relationship existed to support her FCRA claim, the Court grants Defendants' Renewed Motion to Dismiss as to the FCRA claim.

### F. Plaintiff's Claim Under the TDCPA Fails

Defendants move to dismiss Plaintiff's claim under the TDCPA on the basis that a Texas statutory claim cannot be maintained when the case is governed by a contractual choice of law provision requiring application of Virginia law. MTD at 9.

Defendants point to *Run Them Sweet*, in which the plaintiff's California tort and unjust enrichment claims were dismissed after the district court determined that the Virginia choice of law provision applied to the plaintiff's breach of contract claim. 224 F. Supp. 3d at 468. There are multiple, significant similarities between *Run Them Sweet* and the facts at hand. In *Run Them Sweet*, as here, the choice of law provision at issue included the phrase "governed by and construed in accordance with[.]" *Id.* at 464. The *Run Them Sweet* court held that "[b]ecause the parties used both words, and both words must be given meaning, it is clear that the parties intended the provision to cover contract-related tort and unjust enrichment claims." *Id.* at 467; *see also Sae*

12

*Han Sheet Co. v. Commonwealth Laminating & Coating, Inc.*, 2019 WL 1574647, at *3 (W.D. Va. Apr. 11, 2019) (holding that the phrase "governed by and construed in accordance with" "was sufficiently broad to bring even the non-contract claims under Virginia law.").

In addition, as is the case here, the *Run Them Sweet* court noted that the choice of law provision at issue was contained in a distinct paragraph titled, "Governing Law," which included a forum selection clause. *See* 224 F. Supp. 3d at 467. The court found that this placement and language "counsel[ed] in favor of a broad interpretation . . . to reduce uncertainty and proceed in one forum under one body of law." *Id.* (quoting *Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14-cv-314, 2014 WL 3109804, at *11 (E.D. Va. July 8, 2014)). Finally, as is the case here, the *Run Them Sweet* court emphasized "the very close factual relationship" between the breach of contract claim and the tort and unjust enrichment claims because all the claims were "based on precisely the same facts[.]" *Id.*

Here, Plaintiff's three claims—the TDCPA claim, the FCRA claim, and the invasion of privacy claim—are all based on the same facts as well. All three claims arise out of conduct associated with Plaintiff and Defendants' contractual relationship under the CreditWise Terms and Conditions. The invasion of privacy claim is based on allegations that Defendants "repeatedly sent automated emails to Plaintiff" and "repeatedly sought contact with Plaintiff via emails and text[.]" Am. Compl. ¶ 153. Similarly, Plaintiff's TDCPA claim is based on allegations that Defendants sent automated emails, pulled her consumer reports without her consent, and misrepresented to Plaintiff and third parties that her discharged account was still open and could be reviewed. *Id.* ¶ 148. Plaintiff's FCRA claim rests on alleged facts that Defendants obtained and used Plaintiff's consumer reports under false pretenses and then, disseminated these reports to Defendants' affiliate parties and other third parties. *Id.* ¶¶ 160–61. Because all three claims

concern conduct associated with the parties' contractual relationship, as governed by CreditWise's Terms and Conditions, the Court concludes that all three claims are governed by the law selected in the parties' contractual choice of law provision.  As the *Run Them Sweet* court stated, "[t]o hold otherwise would not only defy common sense, but lead to the anomalous result of applying" different states' law to "essentially identical" claims, "a result the parties surely did not intend." 224 F. Supp. 3d at 468.  Because the choice of law provision applies to Plaintiff's TDCPA claim, Virginia law governs and thus, Plaintiff cannot state a claim under Texas statutory law.  Accordingly, the Court grants Defendants' Renewed Motion to Dismiss as to Plaintiff's TDCPA claim.

### G. Plaintiff's Common Law Invasion of Privacy Claim Fails

Finally, Defendants move to dismiss Count Two, Plaintiff's invasion of privacy claim, on the basis that Plaintiff contractually agreed to the application of Virginia law and Virginia does not recognize a common law invasion of privacy claim.  MTD at 10.  This is accurate.  "Virginia does not recognize a common law cause of action for invasion of privacy or intrusion upon seclusion." *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021). By only codifying an invasion of privacy claim for misappropriation of a person's name or likeness for commercial purposes, the Virginia General Assembly "implicitly excluded the remaining [claims for invasion of privacy] as actionable torts in Virginia."  *WJLA-TV v. Lenin*, 564 S.E.2d 383, 394 n.5 (Va. 2002).  Thus, the Court dismisses Count Two.

### H. Further Amendment to the Pleadings Would Be Futile

In her Opposition, *see* Dkt. 83 at 30, and in her Supplemental Response, *see* Dkt. 106 at 19, Plaintiff requests leave to amend her complaint.  The Court finds that further amendment of the Amended Complaint would be futile because no amendment can cure the discussed deficiencies related to all three of Plaintiff's claims.  *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th

Cir. 2008) (affirming dismissal with prejudice under Rule 12(b)(6) where "amendment would be futile in light of the fundamental deficiencies in [Plaintiff's] theory"). Thus, Plaintiff's request for leave to amend the Amended Complaint is denied. Accordingly, it is hereby

**ORDERED** that Defendants' Renewed Motion to Dismiss (Dkt. 80) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**.

The Clerk is directed to close this civil action.

Entered this 26th day of February, 2024.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge